### GIFFORD v. HELMS.

Purchasers from an assignee in bankruptcy of property transferable to or vested in him as such, cannot maintain a suit in equity asserting their title to such property against persons claiming adverse rights therein, if, at the time of the purchase, his right of action was, under the Bankrupt Act (14 Stat. 517; Rev. Stat., sect. 5057), barred by the lapse of time.

APPEAL from the Circuit Court of the United States for the Middle District of Tennessee.

The facts are stated in the opinion of the court.

*Mr. Montgomery Blair* for the appellants.
*Mr. C. W. Hornor, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

District courts, though constituted courts of bankruptcy, do not possess the power under the twenty-fifth section of the Bankrupt Act to order, in a summary way, the sale of an estate, real or personal, although the same is claimed by the assignee, even though the title to the same is in dispute, if it also appears that the estate in question is in the actual possession of a third person, holding the same as owner, and claiming absolute title to and dominion over the same as his own property, whether derived from the debtor before he was adjudged bankrupt, or from some former owner. *Knight* v. *Cheney*, 5 Nat. Bank. Reg. 305.

Courts of bankruptcy may exercise many of the powers conferred by the first section of the Bankrupt Act in a summary way, as well in vacation as in term time, first giving notice to the party opposed in interest to the prayer of the petition, as in a rule to show cause in an action at law or in a suit in

equity without service of process, the rule being that in such a proceeding neither party is entitled to a trial by jury, and that the only remedy for error is to seek a review under the first clause of the second section of the same act. *Smith* v. *Mason*, 14 Wall. 431.

Power to revise cases and questions which arise in the district courts in such proceedings is conferred upon the circuit courts by that clause of sect. 2, but it is settled law that the power so conferred does not extend to any case where special provision for the revision of the case is otherwise made. *Morgan* v. *Thornhill*, 11 id. 74.

Two trust-deeds were executed by the debtor of the complainant in his lifetime, — one to each of the two trustees named in the bill of complaint; the first embracing several tracts of land which were conveyed to secure his creditors, and the second consisting of an interest in a tract of two hundred acres, arising from a verbal contract to purchase the same, and an advance of $7,000 in part payment of the stipulated consideration, in respect to which the party who agreed to purchase the same, not being able to pay the balance, determined to abandon the contract and assert a lien upon the tract for the amount paid.

Twenty-nine hundred dollars of the amount paid for the tract by the debtor was the money of his wife, which she derived from the estate of her father, and which, by agreement between her and her husband, made while the money was still in the hands of the executor, he was allowed to apply towards paying for the land, the stipulation between them being that in taking title to the land such an interest in the same should be conveyed to her in her own separate right as would be proportionate to the amount of her money applied to the payment of the consideration.

Abundant evidence to substantiate those facts is found in the record; and it also appears that the debtor of the complainant, on the 10th of June, 1867, conveyed to his son all of his equitable interest in the several properties previously transferred to the before-mentioned parties, together with whatever interest he owned in the turnpike therein described, which was not included in either of said trust-deeds. Proof of that

conveyance is placed beyond doubt; but it is equally clear that the chief object of the same was to secure the repayment to his mother of the money belonging to her which the father used and applied towards paying for the prior-described tract of land, the son becoming bound to her for that amount under the agreement.

Eight months and a half later, to wit, on the 28th of February, 1868, the said debtor of the complainant filed his petition in bankruptcy, and in the month of February of the succeeding year received his discharge. On the 6th of May next, after the petition in bankruptcy was filed, the assignee of the estate was appointed, and due conveyance of all the assets of the bankrupt was made to him, as required by law. Schedules of the bankrupt's liabilities were duly filed, but they did not mention the name of the original complainant as a creditor.

Allegations to the effect that the complainant proved debts to the amount of $4,500 are contained in the bill of complaint, which was filed Aug. 31, 1871, and the record shows that his own deposition given in the cause affirms the allegation; but the answer of the respondents denies the fact alleged, and the deposition of the bankrupt fully supports the averment of the answer.

Service was made; and the respondents appeared and demurred to the bill of complaint, and they subsequently filed an answer setting up several defences, including most or all of the causes shown in support of the demurrer. Hearing was had; and the court — the district judge presiding — overruled the demurrer to the bill of complaint. Proofs were subsequently taken; and the parties having been again heard, the court — the circuit justice presiding — entered the final decree as to the merits in favor of the complainant, from which the respondents appealed.

Since the suit was commenced new parties have been made, in consequence of the death of the complainant and the principal respondent, but the questions to be decided are unaffected by that circumstance.

Three of the errors assigned were fully discussed at the bar. They are as follows: 1. That the court erred in holding that the conveyances made by the assignee to the complainant included any of the property sued for in the bill of complaint.

2. That the court erred in holding that the said conveyance was of any validity, even if it did include the property for which the suit is brought.   3. That the court erred in overruling the defence that the suit is barred by the Statute of Limitations.

These several assignments of error were discussed at the bar in the order herein stated; but it will be more convenient to consider the question of limitation first, for the reason that, if that is sustained, the other assignments of error will become immaterial, as sufficiently appears from the prayers of the bill of complaint, of which the following are the most material: 1. That the conveyance from the bankrupt to his son may be decreed to be fraudulent, null, and void.   2. That the equities and personal property therein described may be decreed to the complainant.   3. That if the court should be of the opinion that he, the complainant, is not entitled to all of the equities described, then that his *pro rata* in the same may be decreed to him, and that the $4,000 paid by the son, if found to have been paid out of his own money, may be decreed to have been paid in fraud and with notice that he is not entitled to recover the amount.   4. That all debts included in the deed of trust may be decreed to be invalid as a lien on the estate of the bankrupt, and that all claims against the bankrupt which are unproven, whether secured or not, may be decreed invalid as to the estate of the bankrupt, and not entitled to be paid out of the same in whole or in part.   5. That the cloud caused upon the titles by the conveyance to the son may be removed, and that the titles to the tracts may be decreed to the complainant free from the liens created by the conveyance.

Actions at law or suits in equity may, in a proper case, be brought by the assignee against any person to recover interests of the bankrupt held adversely, or by any person against such assignee touching any property vested in such assignee; but the same section of the Bankrupt Act provides that no suit at law or in equity shall in any case be maintained by or against such assignee, or by or against such person in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued for or against such assignee. 14 Stat. 518; Rev. Stat., sect. 5057.

Deeds of trust, as before explained, were executed to certain

trustees, and on the 10th of June, 1867, the equities in controversy were conveyed by the debtor to the son. On the 28th of February of the next year the debtor filed his petition in bankruptcy. Due proceedings followed, and on the 6th of May, 1868, more than two years before the bill was filed, the assignee was appointed, and conveyance was duly made to him of all the assets of the bankrupt.

Speedy administration as well as equal distribution of the assets among the creditors is the policy of the Bankrupt Act, and the former is almost as necessary as the latter to accomplish the beneficent ends for which the law was passed. Impressed with that view, Congress enacted the limitations contained in the second section of the Bankrupt Act, which, like other statutes of limitation, must receive a reasonable construction. Beyond doubt, it applies to all judicial contests between the assignee and other persons touching the property or right of property of the bankrupt, transferable to or vested in the assignee, where the interests are adverse, and have so ex isted for more than two years from the time when the cause of action accrued for or against the assignee. *Bailey* v. *Glover*, 21 Wall. 346.

Absolute title to the equities in controversy was claimed by the respondent from the moment the deed to him of the same was executed by the bankrupt; and if that conveyance was made in fraud of creditors, as alleged by the complainant, it is clear that the equities were transferred to and vested in the assignee when he was appointed, and of course his right of action to recover the same commenced at the time the instrument of assignment was executed and delivered. Whatever remedy for the supposed fraud the assignee had, it is evident he might have pursued and enforced at any time after he acquired title to the bankrupt's estate. *Ex parte Currie*, 7 Law Times, N. s. 486; *Cleveland* v. *Boerum et al.*, 24 N. Y. 615.

Ignorance of the state of the title is not alleged, nor is there any pretence of concealment. Instead of that, the proof is clear that the assignee knew all the facts, and that he came to the conclusion that the title of the respondent was valid, and that the assignee had no just claim to the equities. *Terry* v. *Anderson*, 95 U. S. 632; *Clark* v. *Hackett*, 1 Cliff. 280.

Nor is there any thing to benefit the complainant in the suggestion that he does not sue as assignee or creditor, as the record clearly shows that he claims as purchaser from and under the assignee.

Pending the proceedings in bankruptcy, the assignee petitioned the court for authority to make sale of the notes, judgments, and accounts of the bankrupt, for the reasons set forth in the petition, not including the equities which the bankrupt had previously conveyed to his son. Enough appears to show that the reason he did not include those equities in the petition was, that he had reported to the court the day previous that the conveyance to the son was without fraud, and valid. Reasonable doubt upon that subject cannot be entertained; but the order entered by the court upon the petition is broader than the prayer of the petition, and includes the interest of the bankrupt in the property conveyed to " the son, and all other property belonging to the estate." Pursuant to that order, dated May 17, 1871, the assignee, on the 13th of June following, sold all the assets of the bankrupt for the sum of $225 to the complainant, he being the highest bidder for the same at the public sale.

Nothing can be plainer in legal decision than the proposition that the complainant did not acquire, by the conveyance made to him under that sale, any greater rights than those possessed by the grantor. Whatever rights the assignee possessed, if any, were acquired May 6, 1868, when he was appointed and qualified as the assignee of the estate of the bankrupt. Throughout the whole period intervening between that date and the date of the purchase by the complainant, the respondent held the equities in controversy adversely to the supposed right of the assignee.

Viewed in the light of these suggestions, it is clear that the right, if any, of the assignee was barred by the Statute of Limitations before purchase of the same by the complainant.

The decree must be reversed with costs, and the cause remanded with directions to dismiss the bill of complaint; and it is

*So ordered.*