### In re CHURCHMAN & Co., Bankrupts.

*(District Court, D. Delaware.  January, 1881.)*

1. SUIT AGAINST ASSIGNEE — LIEN ON VESSEL. — A suit in a bankrupt court, to ascertain and establish a lien on a vessel for supplies and repairs furnished by a creditor against the assignee, is the prosecution of an interest touching a right of property adverse to the assignee as the representative of the unsecured creditors.

2. SAME—PETITION AGAINST FRAUD.—If the creditor proceeds by petition against the fund in court, being the proceeds of the sale of the vessel under the order of the court, and seeks equitable relief by an order or decree ascertaining and establishing his lien, or, in case of refusal, such other relief as the court may think him entitled to, such proceeding is substantially a suit, although it presents itself in the form of a petition and contains no prayer for process.

3. SAME—STATUTE OF LIMITATIONS—REV. ST. § 5057.—Such suit is barred by the statute of limitations (Rev. St. § 5057) "unless brought within two years from the time when the cause of action accrued for or against such assignee."

**In Bankruptcy.**

BRADFORD, D. J. A petition of Neafie & Levy, of Philadelphia, ship-builders and machinists, was filed in this court for the ascertainment and establishment of maritime liens growing out of repairs and supplies furnished by them to the tug-boat Col. S. L. Brown, amounting to $3,800.82, and upon the tug-boat F. A. Churchman, amounting to $311.71. The petition also prayed in the alternative for an allowance by the court of the amounts due for the said supplies and repairs as proper under the circumstances of the case, if it should be determined by the court that liens were not to be allowed or created, or considered as payable out of the funds in the court for distribution. Bankrupts owned two-thirds of the tug-boat Brown, and eleven twenty-fourths of the Churchman. The date of filing the petition in voluntary bankruptcy was March 13, 1876. The assignee, Ignatius C. Grubb, was appointed in April, 1876. These tug-boats were sold under an order of this court on December 4, 1877, free and discharged from all encumbrances. A libel in admiralty was filed by the petitioners after the appointment of the assignee, seeking to establish a maritime lien on the steam-tug Brown for materials and repairs furnished subsequent to the act of bankruptcy. This libel was dismissed, with costs against the libellants, on the grounds that this vessel was already *in custodia legis,* and not the proper subject-matter of arrest on a libel. And contemporaneously in the bankrupt court a petition seeking to establish and enforce a lien for the amount claimed in the libel was ordered to be amended so as to pray for such an allowance as in the discretion of the court was proper for the repairs and services rendered the Brown since the proceedings in bankruptcy, and which, in the judgment of the court, had not created a lien. A similar petition by the said petitioners, for like services and repairs to the tug Churchman, was afterwards filed on November 19, 1879. Upon consideration of the first petition there was allowed by the court, for repairs and supplies furnished to the Brown, the sum claimed, without interest, viz., $232.55. The claim for supplies and repairs furnished the Churchman, viz., $96.03, has not yet been passed on by this court.

At the time of filing the last petition another one was filed seeking to establish and enforce a maritime lien for services and repairs on both of these tug-boats, furnished and expended long before the proceedings in bankruptcy. The dates of repairs and services to both boats ran from June 20, 1873, to October 15, 1875. Pending the proceedings for the release of the tug Brown from the arrest made on the libel as aforesaid, and on the petition in the bankruptcy court for affirmance of the admiralty rule, an agreement was entered into by counsel for sale of the tug-boats. That agreement was as follows: "That the proceeds of the sale of the two-thirds of said tug shall, when they come into the hands of said assignee, stand in lieu of the two-thirds interest in said tug-boat owned by the said assignee, and that the libellants shall have, as against said fund, all the rights, lien, claim, and priority that they would have had against the two-thirds interest of said tug. This stipulation applies to the equal two-thirds part of said claim of $349.91 and interest, but is not intended to preclude the said assignee from contesting the right of the libellants to have any lien on or to be paid out of said fund, or to contest the amount of said bill, or to set up any other defence against the said claim, or against its payment out of said fund, or with respect to the order of priority of any lien therefor which the libellants may be adjudged to have."

In pursuance of this agreement the tug Brown was sold by the order of this court, clear of all encumbrances, and the proceeds paid to the assignee in bankruptcy. A similar order was made for the tug Churchman, and she was sold in pursuance of said order, and the proceeds of sale left in the hands of the assignee.

It was understood, agreed, and so ordered by the court, that the proceeds of the sales of these two tugs should stand in lieu of the vessels themselves, and be made answerable for any maritime lien which might be ascertained and established against them or either of them. In the agreement above recited reference was alone made to the lien for $349.91 for repairs and supplies furnished the tug Brown, but I apprehend that, if there is to be found a valid lien not mentioned

in the agreement, the petitioners would not be bound from seeking to establish it by reason of this agreement between counsel.

The counsel for the assignee has put in an answer to this petition, and states various reasons why the prayer of the petitioner should not be granted. He admits repairs and supplies furnished the said tug-boats by the petitioners before the acts of bankruptcy, but disputes the correctness of the amounts. He admits bankrupts giving a promissory note for $1,000 on account of said indebtedness. He admits bankrupts' two-third interest in said Brown, and eleven twenty-fourths interest in Churchman, were sold by the order of the court, free and clear of all liens; and that the proceeds of bankrupts' interest in said Brown, amounting to $2,000, and in said Churchman, amounting to $2,600, have been paid to the said respondent as assignee of said bankrupts' estate. He further admits that the repairs, etc., to both vessels were furnished in the city of Philadelphia; the Brown being owned wholly out of the state of Pennsylvania, and the Churchman being owned partly in Delaware and partly in Pennsylvania. Assignee denies that materials and supplies were furnished on the "credit of the said boats, as well as of the masters and owners of them respectively." Further, the assignee does not admit the fairness and reasonableness of the charges. Assignee insists that this petition is irregular, defective, and insufficient, because it was not preceded or accompanied by legal proof of the claim of said petitioners, as required by the act of congress, and on that account should be dismissed. Assignee further insists that no maritime lien was ever created on said boats, or either of them, by reason of repairs and supplies furnished, and if one ever did exist it has been waived and no longer exists by reason of the laches of the petitioners in omitting to take proceedings for the ascertainment and enforcement of the pretended lien prior to the time of filing this petition. The assignee claims that the petitioners are barred from attempting to establish any lien by reason of the lapse of time since the accruing of the cause of action, and craves the protection of the statute of limitations of the state of Dela-

ware in that behalf. He further insists that the petitioners are barred from attempting to ascertain and establish this lien, and have the same decreed by this court, because he is barred by the act of congress, (section 5057,) which is in these words, viz.: "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action barred at the time when an assignee is appointed."

On the first ground relied on by the respondent, the court thinks that if the petitioner has an equitable ground for relief he will not be estopped by reason of not having proven his claim prior to the time of filing his petition, as he has already proven it under the order of this court, and had a right to do so up to the time of the distribution of the assets by the assignee. It is alleged by the respondent that no maritime lien ever was created. That is a fact to be determined on proof, if the court should think it can properly be gone into hereafter. The court is unwilling to say that if there was a maritime lien created it has been lost by the laches of the petitioners, or by the lapse of time since the labor and materials were furnished, so far as the statutes of Delaware are concerned.

Is the petitioner barred by the statute of the United States (section 5057, Rev. St.) from proceeding to ascertain and establish this lien? What do the petitioners ask the court to do in this case? They are asking to have ascertained, established, and decreed a lien on the funds in the hands of the assignee, which, when said lien is ascertained, should be paid over to them as secured creditors to the exclusion of the other and general creditors. Surely this is an adverse claim by a creditor against an assignee touching property or rights of property of the bankrupt transferable and vested in the assignee. As far as the statute of limitations is concerned the important question is, is this proceeding by the lien cred-

itors, the petitioners, substantially a suit? We have no doubt it is. Petitions by assignees to compel lien creditors to disclose the character of pretended liens, and to ascertain liens, in *Stickney* v. *Wilt*, 23 Wall. 150, and in *Milner* v. *Meek*, 5 U. S. 252, are considered and so adjudged to be substantially suits in equity.

. Admitting it to be true, as claimed by the petitioners' counsel, that a creditor can proceed by petition and voluntarily submit himself to the jurisdiction of the court, while an assignee cannot proceed in that manner, it does not follow that the proceeding may not be substantially a suit; for, as has been said, if a proceeding by petition by an assignee be a suit, there is no reason why a like proceeding by a creditor to determine the same issue is not also a suit. The issue being the same between the same parties, if one is a suit in equity the other must also be one. But this lien is a maritime lien, against which no statute of limitations runs, and it is argued that it was not meant to abridge the operation of an admiralty lien by this limitation of actions; that it was not intended to make a new subject-matter, but to simply apply the limitation to the ordinary forms of action known in the common-law courts. This may be ingenious, but it does not appear to be founded in reason. The congress of the United States certainly had power to limit the prosecution of claims in admiralty as well as any other, and there is no reason why disputed contests over liens should be permitted to postpone the settlement of the bankrupt estate on account of any peculiar sacredness of a *maritime claim*. They are not excepted by the act, and we do not see why they should be.

I think there can be no doubt that the ascertainment or establishment of a lien, which, when paid, will absorb most if not all the property covered by it, is the determination and settlement of the most vital question touching property transferable to the hands of the assignee, and that the statute of limitations applies to a proceeding to enforce such a claim as a suit. The fact that the subject-matter of the controversy is a lien, does not prevent the proceeding being considered a suit. The supreme court, in *Stickney* v. *Wilt*, 23 Wall. 150,

and *Milner* v. *Meek*, 95 U. S. 252, have treated and considered proceeding by petition on behalf of the assignee, to dispute with lien creditors of the bankrupt the validity of their liens, as suits in equity. And this disposes of all that is necessary to be said on that point. Supposing that petitioners were bound to proceed by suit against the assignee, are they barred by the statute of limitations before quoted? This lien arose on the furnishing of the repairs and supplies, if it was created at all, and could have been enforced by suit immediately afterwards—before the bankruptcy, if they were furnished before that period—and at any time subsequently. Certainly the vessels could have been proceeded against by suits *in rem* as well as the funds arising from their sale. As the goods were furnished, (the last charge being on October 15, 1875,) it will appear that more than four years had elapsed before suit was brought to ascertain and establish the lien growing out of the petitioners' claim, the petition having been filed on November 19, 1879. The petitioners' counsel insists that the statute of limitations cannot commence to run against the assignee until the receipt by him of the money from the sale of the boats, which was December 12, 1877. This is manifestly an error, as by operation of law all the property of the bankrupts was vested in him by deed of assignment, referring back and operative from the date of the bankruptcy, which was March 13, 1876. Moreover, this suit is not merely to take money out of court; it is also for the ascertainment and enforcement of a lien, and it was fully competent for the petitioners to have ascertained and established all liens on the property of the bankrupts as fully and effectually after the appointment of the assignee as before. We cannot, therefore, accept this view of the case as affected by the statute of limitations.

The supreme court, in *Bailey* v. *Glover*, 21 Wall. 342, say in reference to the statute of the Revised Code above quoted: "This is a statute of limitations. It is precisely like all other statutes of limitations, and applies to all judicial contests between the assignee and other persons touching the property or rights of property of the bankrupts, transferable or vested

in the assignee, where the interests are adverse, and have so existed for more than two years from the time when the cause of the action accrued for or against the assignee." In *Gifford* v. *Helms*, 98 U. S. 248, the same language is held. We do not see how we can avoid giving effect to the statute of limitations, (U. S. Rev. St. § 5057.)

That part of the prayer of the petitioners must be denied, but they can prove the claim as an unsecured one, subject, however, to any defence the assignee may make to the amount or validity and accuracy of the items.

The petitioners must pay the costs.