JOHN B. BOWEN, as Assignee in Bankruptcy of ANNA N. DWIGHT, Appellant, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Respondent.

1. LIMITATION OF ACTION — ASSIGNEE IN BANKRUPTCY — U. S. REV. STAT. § 5057. The limitation of section 5057 of the Revised Statutes of the United States — that " No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee " — is applicable only to suits growing out of disputes in respect of property of the bankrupt which came to the hands of the assignee, to which adverse claims existed while in the hands of the bankrupt and before assignment.

2. EJECTMENT BY ASSIGNEE IN BANKRUPTCY FOR WRONGFUL ENTRY AFTER ASSIGNMENT. The limitation of two years imposed by section 5057 of the Revised Statutes of the United States does not apply to an action by an assignee in bankruptcy for the recovery of real property owned by the bankrupt against a person who, without right and after the title had vested in the assignee, had entered upon and taken possession thereof; and, hence, the maintenance of such an action is not precluded by the lapse of two years after the wrongful entry before its commencement.

*Bowen* v. *Delaware, L. & W. R. R. Co.*, 82 Hun, 39, reversed.

(Argued June 17, 1897; decided October 5, 1897.)

Appeal from a judgment of the General Term of the Supreme Court in the fourth judicial department, entered December 17, 1894, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit, a jury having been waived.

The nature of the action and the facts, so far as material, are stated in the opinion.

*S. C. Millard* for appellant. It was not the intention of the framers of section 5057 of the United States Revised Statutes that it should apply to the conceded facts in this case. The section has no application to suits growing out of the dealings of the assignee with the estate after it comes to his hands. (*In re Conant*, 5 Blatchf. 54; *Stevens* v. *Hauser*, 39 N. Y. 305; *Dushane* v. *Beall*, 161 U. S. 513; *Clark* v. *Clark*, 17 How. [U. S.] 315; *Phelps* v. *McDonald*, 99 U. S. 298; *French* v. *Merrill*, 132 Mass. 525.) As against the statutes of the state of New York, we do not think the construction put upon section 5057 by the General Term can be sustained. This section deprives the owner of lands of his right of entry, or limits his right to two years, when our statutes allow her citizens twenty years in which to bring their actions. (*Stevens* v. *Hauser*, 39 N. Y. 312.) There is no evidence in the case that the defendant ever set up any claim of title to the premises in question, or claimed an adverse interest in them until this action was brought. In the absence of all proof, they were either trespassers or presumed to have entered under the assignee. (*Stevens* v. *Hauser*, 39 N. Y. 305; *Wager* v. *T. U. R. R. Co.*, 25 N. Y. 532; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97.) Plaintiff was not estopped from claiming the possession of the premises for the reason that he did not forbid the construction of the railroad thereon. (6 Wait's Act. & Def. 703; *Smith* v. *McNamara*, 4 Lans. 169; *Reed* v. *McCourt*, 41 N. Y. 435; *C. N. Bank* v. *Nat. Bank of C.*, 50 N. Y. 575; *Olcott* v. *MacLean*, 73 N. Y. 223; *Fredericks* v. *G. S. H. Assn.*, 61 N. Y. S. R. 650; *Winegar* v. *Fowler*, 82 N. Y. 315; *Malloney*

v. *Horan,* 49 N. Y. 111; *Blair* v. *Wait,* 69 N. Y. 113; *Dezell* v. *Odell,* 3 Hill, 215.) The decision in this case should have been in favor of the plaintiff, and for the recovery of the possession of the premises described in plaintiff's complaint. (*C. B. Co.* v. *Paige,* 83 N. Y. 183; *Smith* v. *City of Rochester,* 92 N. Y. 463; *Stevens* v. *Hauser,* 39 N. Y. 302.)

*Louis Marshall* for respondent. The plaintiff's claim of property to the lands in suit being derived from his appointment as assignee in bankruptcy, and his cause of action relating to property transferred to and vested in him as such assignee, this action is not maintainable as against the defendant, which claims an adverse interest in such property, it not having been brought within two years from the time when such cause of action accrued, as required by section 5057 of the United States Revised Statutes. (*Bailey* v. *Glover,* 21 Wall. 342; *Gifford* v. *Helms,* 98 U. S. 248; *Esmond* v. *Apgar,* 76 N. Y. 359; *Wisner* v. *Brown,* 122 U. S. 214; *Greene* v. *Taylor,* 132 U. S. 415; *Doty* v. *Johnson,* 6 Fed. Rep. 481; *Jenkins* v. *International Bank,* 106 U. S. 571; *Phelan* v. *O'Brien,* 13 Fed. Rep. 656; *Norton* v. *De La Villebeuve,* 13 Nat. Bank. Reg. 304.) The plaintiff has no title of record to the premises sought to be recovered in this action, neither has he shown a right thereto by adverse possession. (*Brennan* v. *Willson,* 71 N. Y. 502; *Newton* v. *Bronson,* 13 N. Y. 587; *Berger* v. *Duff,* 5 Johns. Ch. 369; *Hunt* v. *Burrel,* 5 Johns. 137; *Hawley* v. *James,* 5 Paige, 318; *Lewis* v. *Ingersoll,* 1 Keyes, 347; *Crooke* v. *County of Kings,* 97 N. Y. 421.)

Andrews, Ch. J. This is an action of ejectment, brought in 1888 by the assignee in bankruptcy of Anna N. Dwight, who was adjudged a bankrupt in 1878, to recover lands included in a way laid out by the bankrupt before her bankruptcy across lands in the city of Binghamton owned by her, which she had mapped and divided into lots abutting on the way twenty feet in width, extending from the west bank of

the Chenango river westerly to Front street, and also land under water. The bankrupt prior to her bankruptcy had mortgaged the lots, through the purchase of which, on the foreclosure of the mortgage, the New York, Lackawanna and Western Railroad Company acquired title. In 1880 that corporation, claiming to have the right so to do, but without the consent of the bankrupt or her assignee, entered upon the way and built an embankment therein from Front street to the Chenango river, and laid thereon railroad tracks, and also constructed abutments in the river at the termination of the way to support one end of a bridge which it erected across the river. Thereafter, in 1882, the New York, Lackawanna and Western Railroad Company leased to the defendant, the Delaware, Lackawanna and Western Railroad, and the latter corporation entered under the lease and has ever since used the bridge and the embankment and tracks thereon for railroad purposes. The plaintiff, prior to the commencement of this action, claiming that the title to the way and to the land in the river upon which the western abutments of the bridge were placed, was in the bankrupt at the date of the bankruptcy and vested in him as assignee under his appointment in October, 1878, demanded possession of the lands so occupied by the defendant, which was refused.

Upon the admissions and findings in the record, it must be taken as an established fact that the title to the way and to the land under the water of the river occupied by the abutments of the bridge on the west side of the Chenango river was in Anna M. Dwight at the time of the adjudication in bankruptcy, and passed to the assignee upon his appointment, and was not covered by the mortgage under which the lessor of the defendant acquired title to the lots abutting on the way, and that the defendant's lessor wrongfully and without the consent of the plaintiff, who had acquired and then held a good title to the land embraced in the way, subject only to the easement of passage in favor of the owners of the lots abutting thereon for the ordinary purposes of travel, and to the land under water, entered upon the premises in question and appro-

priated them for railroad uses. Upon these conceded facts a case was made which, under the general rule of law, entitled the plaintiff to judgment. Land dedicated by the owner for a street or way cannot be appropriated without his consent to the use of a railroad (*Williams* v. *N. Y. Central R. R. Co.*, 16 N. Y. 97; *Wager* v. *Troy Union R. R. Co.*, 25 id. 526), and one to whom the owner of the soil in the way has conveyed a lot abutting thereon and bounded by the lot line acquires only the right to use it for the ordinary purposes of a highway, and can no more than a stranger justify an appropriation thereof for purposes inconsistent with the object of the dedication. (*Uline* v. *N. Y. Central R. R. Co.*, 101 N. Y. 98, 106.) The entry, therefore, by the lessor of the defendant was a trespass, and amounted to a disseizin of the plaintiff, and the defendant, who entered under the lease in 1882, was a trespasser also. By the general statute of the state, a right of entry upon lands wrongfully withheld from the true owner, may be asserted at any time within twenty years from the disseizin, and in the present case only eight years had elapsed from the entry of the lessor of the defendant and the commencement of the suit. But it was held by the trial court that the plaintiff was barred of his remedy to recover the land by force of section 5057 of the Revised Statutes of the United States, which enacts a limitation of two years for the bringing of an action by an assignee in bankruptcy in the cases embraced in the section, and which the trial court held precludes an assignee in bankruptcy from maintaining an action for the recovery of real property owned by the bankrupt against a person who, without right and after the title had vested in the assignee, had entered upon and taken possession thereof, provided the assignee had allowed two years to elapse after the wrongful entry before bringing his action. The correctness of the construction put by the trial judge upon this section is the only question now before us.

That section, which was incorporated into the revision of the United States statutes from the Bankrupt Act of March 2, 1867, chap. 176, § 2, in substantially the same words, is as

follows : " No suit, either at law or in equity, shall be main-
tainable in any court between an assignee in bankruptcy and
a person claiming an adverse interest, touching any property
or rights of property transferable to, or vested in, such
assignee, unless brought within two years from the time when
the cause of action accrued for or against such assignee. And
this provision shall not, in any case, revive a right of action
barred at the time when an assignee is appointed." It does
not, we suppose, admit of question that Congress, having
plenary power over the subject of bankruptcy, may pre-
scribe such limitations of time, binding both upon the State
and Federal courts, for the bringing of actions to enforce
rights in favor of or against a bankrupt or his estate, as it
may deem proper, consistent with affording a reasonable
opportunity to litigants. But it is not, we think, going too
far to say that in applying a statute cutting down to so short
a period as two years the right to enforce a title to real prop-
erty, it should appear with reasonable certainty that the par-
ticular case is within its provisions, and that neither a subtle
nor forced construction should be resorted to to deprive a
party of a right which he has under the general rules of limi-
tation. That section 5057 applies to actions respecting prop-
erty in lands which become vested in the assignee in bank-
ruptcy and to actions of ejectment therefor, has been decided
in several cases by the Supreme Court of the United States.
(*Gifford* v. *Helms*, 98 U. S. 248 ; *Wisner* v. *Brown*, 122 id.
214; *Adams* v. *Collier*, Id. 382; *Greene* v. *Taylor*, 132 id.
415.) The section has been liberally construed in defining the
meaning of the words *property* and *rights of property* and
*adverse interest*, and they have been held to include debts
owing to or by the bankrupt (*Jenkins* v. *International Bank*,
106 U. S. 571 ; *Doty* v. *Johnson*, 6 Fed. Rep. 481), and
while the section refers to suits between the assignee and
another person, not naming the grantee or successor in inter-
est of the assignee, it has been held, contrary to suggestions in
some earlier cases (See *Banks* v. *Ogden*, 2 Wall. 57, and opinion
of Mason, J., in *Stevens* v. *Hauser*, 39 N. Y. 302), that the

grantee of the assignee is bound under section 5057, where-ever the assignee was bound at the time of the purchase and although the sale was made under the order of the court. (*Gifford* v. *Helms, supra ; Greene* v. *Taylor, supra.*)

There can be no doubt that the limitation in section 5057 applies to all causes of action and property rights and all adverse claims to property of the bankrupt existing in favor of or against the bankrupt at the time of the adjudication in bankruptcy and the appointment of an assignee, and if the lessor of the defendant had entered upon and taken pos-session of the lands in question under claim of title adverse to the bankrupt, before the bankruptcy, it does not admit of question under the adjudications, that after the lapse of two years from the appointment of the assignee, before suit brought to enforce the bankrupt's title, the right of entry would be barred. But there was no adverse claim to the land made by the lessor of the defendant, or any other person, until 1880, nearly two years subsequent to the vesting of the title in the assignee, and the question is whether the right of the assignee to assert his unquestioned title acquired from the bankrupt, against the defendant and its lessor, was cut off by the two years' limitation in section 5057. The bankrupt had no cause of action, because the unlawful entry was subsequent to the vesting of the title in the assignee, and it accrued solely in favor of the assignee by reason of the acts of the defendant and its lessor committed after the assignment.

The short limitation to actions by or against assignees in bankruptcy was not enacted for the first time in the Bank-rupt Act of 1867. It had its origin in the 8th section of the Bankrupt Act of 1841 (5 U. S. Statutes at Large, 446). That section enacted that the Circuit Courts of the United States should have concurrent jurisdiction with the District Courts "of all suits at law and in equity which may or shall be brought by any assignee of the bankrupt against any person or persons claiming an adverse interest, or by any such per-son against such assignee touching any property or rights of

property of said bankrupt transferable to or vested in such assignee, and no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest touching the property and rights of property aforesaid in any court whatsoever, unless the same be brought within two years after the declaration and decree in bankruptcy, or after the cause of suit shall first have accrued." The first case where the court was called upon to construe this section was *In re Conant* (5 Blatch. 54). That case arose in the United States District Court for the southern district of New York. A petition had been filed in the District Court for the purpose of vacating an order of sale of a certain lot of land belonging to a bankrupt, obtained by the assignee, and under which a sale had been made. More than two years had elapsed between the sale and the making of the application, and it was insisted that the 8th section, above quoted, was a bar to the relief sought. This claim was overruled by Mr. Justice NELSON, who said : " It is obvious that the limitation applies only to suits growing out of disputes in respect to property and rights of property of the bankrupt which came to the hands of the assignee, and to which adverse claims existed while in the hands of the bankrupt and before the assignment," and after considering the policy upon which the limitation was founded he further said : " The limitation has no reference to suits growing out of the dealings of the assignee with the estate after it comes to his hands. These are matters for which he may be personally responsible, and no reason existed for changing the period of limitation, any more than in the case of any other trustee dealing with trust property. There certainly could be no reason for applying the short term in favor of persons dealing with the assignee in respect to the estate of the bankrupt, after it comes into his hands and the statute makes the limitation mutual." The next reported case where construction was given to section 8 of the act of 1841 is *Stevens* v. *Hauser* (39 N. Y. 305). It was an action of ejectment brought in 1861 by the grantee of the assignee in bankruptcy of one Talmage, who was adju-

dicated a bankrupt in 1842, to recover lands owned by the bankrupt at the time of the bankruptcy. The defendant's possession commenced four years after the title vested in the assignee. The adverse claim, if it existed at all, originated after the appointment of the assignee, and the suit was not brought until fifteen years after the defendant entered into possession of the land. The defendant, among other defenses, pleaded the 8th section of the act of 1841 in bar of the action. The court, following the decision in the *Conant* case, overruled this defense. Three opinions were delivered, and in each opinion the judge delivering it expressed his approval of the construction of the act given by Judge NELSON, WOODRUFF, J., stating that it " was the necessary construction of the statute." The judges were also of the opinion that the case did not show that the entry by the defendant was adverse and that in accordance with the legal presumption it might be presumed to have been in subordination to the true title. But the first ground mentioned was the one on which the decision was primarily based. The case of *Stevens* v. *Hauser* is an explicit authority in this court that the 8th section of the act of 1841 had no application to wrongs against an assignee in bankruptcy or to the property of the bankrupt in his hands, originating after the appointment of the assignee. In *Esmond* v. *Apgar* (76 N. Y. 359) the 8th section was held to apply in that case on the ground that the adverse claim existed before the assignment.

It is, however, insisted by the learned counsel for the respondent that the construction placed in the cases mentioned on the 8th section of the act of 1841 is not controlling in the construction of the 2nd section of the act of 1867, re-enacted in section 5057 of the revision, by reason of the difference in the language of the two provisions. It will be observed that the words " of said bankrupt," before the words " transferable to and vested in such assignee," in the 8th section of the act of 1841, are omitted in the statute of 1867. The omission is said to be significant of an intention by the act of 1867 to broaden the scope of the limitation in the former act, so as to extend it to any

controversy between an assignee and a third person, whether
originating before or after the bankruptcy. So, also, in place
of the words "within two years after the declaration and
decree in bankruptcy, or after the cause of suit shall first have
accrued," in the act of 1841, are substituted in the act of 1867
the words "within two years from the time when the cause of
action accrued for or against such assignee." The words "of
said bankrupt" in the act of 1841 add nothing to the mean-
ing of the clause in the second act, in which they are omitted.
The words "transferable to or vested in such assignee"
refer to the property or rights of property of the bankrupt
which were transferred by the assignment. The act of 1867
omitted superfluous words in the act of 1841, but did not,
we think, change or enlarge the meaning of the act of 1841.
Mr. Justice MILLER, in the case of *Bailey* v. *Glover* (21
Wall. 342), paraphrases the language of section 2 of the act
of 1867, and in so doing introduces the omitted words "of
the bankrupt" contained in the act of 1841. He says: "It
(the section) applies to all judicial contests between the assignee
and other persons touching the property, or rights of property,
*of the bankrupt*, transferable to, or vested in, the assignee, etc.
* * * Such is almost the language in which the provision
is expressed in section 5057 of the Revised Statutes." This is
repeated in the opinion of Mr. Justice CLIFFORD in *Gifford* v.
*Helms (supra).* In *Phelan* v. *O'Brien* (13 Fed. Rep. 656) the
court, in construing section 5057, referring to the *Conant*
case, said that that case arose under the limitation clause
in the act of 1841, "which is substantially analogous to
the provision now under consideration." (See, also, *Adams*
v. *Crittenden*, 106 U. S. 576.) We have found no case in
which it has been suggested that section 5057 has a wider
meaning than section 8 of the act of 1841. We think the
decisions under the earlier section are applicable to the con-
struction of section 5057 of the revision.

It is claimed that the case of *Banks* v. *Ogden (supra)* tends
to discredit the construction of the statute of 1841, given in
the *Conant* case. The question there arose between the

grantee of a purchaser under a sale by an assignee in bank-
ruptcy, of land formed by accretion on the shore of Lake
Michigan, and a grantee of the bankrupt whose conveyance
antedated the bankruptcy, of a lot bounded on a street laid
out by his grantor, partly on the land adjoining the lake and
partly under the waters of the lake. The point upon which
the controversy turned was whether the defendant derived
title under his grant to the middle of the street as laid out on
the map, or only to the center line of the dry land embraced
in the street as laid out. The latter was held to be the true
construction of the conveyance, and consequently that the
bankrupt at the time of the assignment in bankruptcy owned
the part of the land next to the water, and that the accretion
followed his title. The defendant set up as a defense the limi-
tation of two years in the statute of 1841. It did not appear
when the defendant took possession of the land in con-
troversy, but it must have been at some time after the
assignment in bankruptcy, since the alluvion did not com-
mence to form until after that time. The court in respect
to this defense expressed a doubt whether the statute
applied to sales made by an assignee under order of the
court, and added: " But it is not necessary now to pass
upon this point. The limitation certainly could not affect
any suit the cause of which accrued from an adverse pos-
session taken after the bankruptcy, until the expiration of two
years from the taking of such possession, and there is nothing
in the record which shows when the adverse possession relied
upon by the defendant in error commenced." The court gave
no consideration to the question involved in the present case.
It was unnecessary to decide it. Assuming that the limitation
applied, it was a complete answer to the alleged limitation
that it did not appear that the two years' adverse possession
had run before the commencement of the action. The case
is not, we think, an authority impugning the decision in the
*Conant* case.

There are three decisions in the Circuit Courts of the United
States which tend to support the contention of the respondent,

namely : *Norton, Assignee,* v. *De La Villebeuve* (13 Nat. Bank. Reg. 304); *Phelan* v. *O'Brien* (*supra*), and *Harvey, Assignee,* v. *Gage* (31 Fed. Rep. 275). In the first of these cases, while the opinion supports the claim that section 5057 applies to adverse interests, whether existing at the time of the assignment in bankruptcy or arising subsequently, the only point involved was as to the application to adverse claims originating prior to the bankruptcy, as to which there can be no doubt whatever. The other two cases are adverse to the ruling in the *Conant* case, although in one of them no reference is made thereto.

Subsequently to the decisions in the cases heretofore referred to, and subsequently also to the decision of the General Term in the case now before us, the case of *Dushane, Assignee, etc.,* v. *Beall,* was argued and decided in the Supreme Court of the United States (161 U. S. 513). The controversy was between Beall, a judgment creditor of one Tinstman, and the assignee in bankruptcy of Tinstman, who became bankrupt in 1876, in respect to the rights of the respective parties to a sum awarded to Tinstman in a judgment obtained in the name of one Shaw against the Pittsburgh & Connellville R. R. Co., in 1887. The judgment was obtained in a suit brought by Shaw against the company in 1882 for the breach of a contract in relation to the working and maintaining of a telegraph line in which Tinstman was interested at the time of his bankruptcy, but which interest was not mentioned in his schedule of assets. Tinstman obtained his discharge in 1877. In 1885 he intervened in the Shaw suit which was then pending, and he was awarded by the judgment therein the sum of $947.43. After his discharge in 1877 he engaged in business and became indebted to Beall, who in November, 1886, procured judgment against him for $730.54. June 9th, 1888 (after the recovery of the judgment in the Shaw suit), Beall garnisheed the Pittsburgh & Connellville R. R. Co. for the purpose of obtaining satisfaction of his judgment against Tinstman out of Tinstman's share of the Shaw judgment. August 10th, 1888, McCullough, the original assignee in bankruptcy of

Tinstman, intervened in the garnishment proceeding, claiming to be entitled as assignee to the award made to Tinstman in the Shaw judgment. On McCullough's death Dushane was appointed assignee in his place and continued the litigation. Beall, in answer to the claim of the assignee of Tinstman, set up the limitation in section 5057. The case came on for trial in the state court in Pennsylvania, and the claim of the assignee was overruled on two grounds: (1) That the assignee by his omission to act for so long a period had elected to abandon the claim against the railroad company; and (2) that he was barred by section 5057. On appeal taken by the assignee, the Supreme Court of Pennsylvania (149 Pa. St. 439) sustained the judgment on the first ground, but in respect to the second ground said: "We do not rest our decision upon the act above cited (sec. 5057), as its application to the facts of the case are more than doubtful." The assignee then appealed to the Supreme Court of the United States, which reversed the judgment of the state courts, the opinion being written by the chief justice. The opinion commences with the following statement: "We concur with the Supreme Court of Pennsylvania that the limitation of § 5057 of the Revised Statutes did not apply. That limitation is applicable only to suits growing out of disputes in respect of property of the bankrupt which came to the hands of the assignee, to which adverse claims existed while in the hands of the bankrupt and before assignment," citing *In re Conant* (5 Blatch. 54); *Clark* v. *Clark* (17 How. [U. S.] 315); *Phelps* v. *McDonald* (99 U. S. 298); *French* v. *Merrill* (132 Mass. 525). In respect to the other point the court held that the facts did not establish an election by the assignee to abandon the claim. It is obvious that the chief justice expressly affirms the doctrine of the case *In re Conant*, and applies it to the construction of section 5057. The respondent seeks to avoid the force of the case as an authority upon the point, upon the ground that the facts did not show that an adverse claim to the fund had existed for the period of two years before the intervention of McCullough in the proceeding of August 10, 1888. There

may be some ground for this contention.   Beall first made his claim June 9th, 1888, only two months before the intervention of McCullough.   If Tinstman can be held to have made a claim when he intervened in the Shaw suit, October 2nd, 1885, it is a sufficient answer that it is held that the limitation in section 5057 does not protect the bankrupt against the claim of the assignee, although not made within the two years mentioned.   (*Clark* v. *Clark, supra ; Phelps* v. *McDonald, supra.*)   The railroad company, if it could have defended against Tinstman's claim, submitted to the judgment rendered, and had no interest adverse to the assignee.   But whether there was any adverse interest arising before or after the assignment in the fund in question, we do not feel at liberty to disregard the emphatic declaration of the opinion on the point in question, which so far as appears was concurred in by all the members of the court, that section 5057 only applies to adverse interests existing at the time of the assignment.   If the rule in the *Conant* case is to be modified, it should, we think, be left to the ultimate authority to so determine.

The short limitation in the Bankrupt Act was doubtless intended to facilitate the settlement of bankrupt estates.   If confined to disputes existing when the bankruptcy intervenes, the principal purpose of the statute will be attained, for the cases are comparatively infrequent of serious delays arising from controversies wholly originating after the bankruptcy, in respect to the property to which the bankrupt had an undisputed title at the time of the assignment.

We think the plaintiff was entitled upon the facts stated in the record to maintain his action, and the judgment below should, therefore, be reversed, and a new trial ordered.

All concur. except Gray, J., absent, and Martin, J., not sitting.

Judgment reversed.