### CRAMSEY v. STERLING.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

1. MARRIAGE—EXISTENCE OF RELATION—PRESUMPTIONS—COHABITATION.

The inference that there was a lawful contract of marriage is justified and presumed from evidence of open cohabitation of the parties as man and wife in her father's house and her introduction to friends and neighbors under the husband's name and as his wife.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Marriage, §§ 16, 61, 62.]

2. DEEDS—VALIDITY—EVIDENCE.

In an action for rescission of a deed and an assignment of plaintiff's interest in certain property, evidence examined, and *held* to show that plaintiff was deceived by misrepresentations of material facts, entitling him to rescind.

3. SAME.

In an action for rescission of a deed and an assignment on the ground of misrepresentation of material facts, it is immaterial whether the information on which the grantor and assignor acted was fraudulent; but it is sufficient that, without negligence on his part, he was led to believe, and did believe, that material facts were different.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 165–182.]

Appeal from Special Term, New York County.

Action by Edward Cramsey against Charles A. Sterling. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

L. E. Warren (George W. Bristol and Woolsey Carmalt, on the brief), for appellant.

John K. Creevey, for respondent.

LAUGHLIN, J. The action is brought to set aside a conveyance of the plaintiff's interest in certain real estate owned and devised by Harriet Cramsey, deceased, and an assignment of his interest in her estate to the defendant, Charles A. Sterling, on the ground that he was induced to execute the deed and assignment by false and fraudulent representations. The plaintiff claims to be the grandson of said Harriet Cramsey, and the son and only heir at law of her son Benjamin F. S. Cramsey, who survived her and died on the 2d day of July,

1902, prior to the execution by the plaintiff of said deed and assignment.

The will of said Harriet Cramsey directed her executors to divide her residuary estate into five parts, and set aside and invest one of the shares and pay the net income thereof to the use of her son Benjamin F. S. Cramsey—designated in the will as Benjamin D. Cramsey—during his life, and upon his death she gave the principal "to his children then living" and to the issue of any deceased child of his per stirpes; and, in the event of his dying without leaving children, or the issue of children him surviving, she gave the principal to his surviving brothers and surviving sisters and the issue of a deceased brother or sister per stirpes. The testator also left another son and two daughters, and she made a like provision for each of them and their issue. Her husband also survived her, and she directed that one of the shares be likewise set apart for his benefit during life, with the remainder over to her four children and their issue. The residuary estate has not been divided into five separate shares, as directed in the will. The decedent at the time of her death owned the premises situated at the northeast corner of Lexington avenue and Eighty-Fourth street, having a frontage on Eighty-Fourth street of 36 feet 8 inches, and extending in depth 102 feet 2 inches. The conveyance sought to be set aside is of the plaintiff's interest in this parcel of land, which is claimed to be one-fifth, subject to the life interest of his grandfather in the income of one-fifth part thereof. The action is defended on the ground that the execution of the deed and assignment was not procured by fraud, and also upon the ground that the plaintiff is not the lawful issue of the son of the testatrix.

The plaintiff did not solicit the purchase of his interest in either the land or the estate by his grantee and assignee. The transfer of his interest was solicited by the latter. The deed prepared at the instance of Sterling, the grantee, who is a grandson of the testatrix and had every opportunity of obtaining information as to his relatives, contains the recital concerning the plaintiff, who was the party of the first part, "Edward Cramsey, commonly known as Edward Farrington, son of Benjamin F. S. Cramsey"; and the assignment, likewise prepared at the instance of the assignee, contains a recital that Benjamin F. S. Cramsey became entitled, under the will of Harriet Cramsey, to the income of a certain trust fund, the principal of which was bequeathed to his surviving children or their issue, and that he died on the 3d day of July, 1902, "leaving him surviving Edward Cramsey, commonly known as Edward Farrington, his only child and heir at law," who was, by virtue of said will, then entitled "to the principal of said trust fund as well as to certain other interests in and to the estate of said Harriet Cramsey." The consideration recited in the deed is $1, and that recited in the assignment is $500. The entire consideration paid to the plaintiff for the execution of both instruments was $500. The plaintiff offered in the complaint to return it with interest from the 22d day of October, 1902, the day on which it was paid to him, and duly tendered the amount in open court during the

trial. The tender was refused, and defendant declined to reconvey the premises, or reassign the interest in the estate.

Assuming the plaintiff to be the sole heir of Benjamin F. S. Cramsey, the assignment transferred a claim to $132.70, his share of net rents collected and on hand, and he owned a one-fifth interest in the real estate then vested in possession, and a one-fourth interest in still another fifth, subject to the life use of his grandfather, who was then 82 years of age. The evidence as to the fair market value of the premises varies from $30,000 to $60,000, and they were mortgaged for $19,-000, leaving the equity worth from $11,000 to $41,000. One witness, the father of the defendant, testified that at a forced or foreclosure sale the premises would not bring over $26,000 or $30,000, subject to a $19,000 mortgage. It is claimed that he meant that the equity on such a sale would only bring $7,000 or $8,000; but that is not entirely clear, and, even so, this was not a forced sale, and it was not to a party interested in the mortgage, and there is no evidence that a foreclosure action was threatened, or even that there was a default in any payment secured by the mortgage. It thus appears, on the undisputed evidence, that the interest of the plaintiff in the estate and in the premises, assuming him to be the sole heir of said Benjamin F. S. Cramsey, as recited in the assignment and deed, was worth, even at a forced sale, about four times what he received, and the fair inference from all the testimony is that it was reasonably worth about ten times what he received. It is to be borne in mind that the defendant had no other interest in the premises or in the estate, and that since the assignment and deed his claim has been recognized to the full extent as the successor in interest to the sole heir of Benjamin F. S. Cramsey. The conveyance and assignment were solicited and executed on the assumption that the plaintiff was such sole heir. It is difficult to perceive on what legal theory the defendant may retain the fruits of the assignment and conveyance, if they were procured by fraud, and place upon the plaintiff, as a further condition precedent to his right to be restored to his former position, which would enable him to assert and establish his right and interest as against the claimants thereof, the burden of showing in this action that he is the legitimate son and sole heir of said Benjamin F. S. Cramsey.

Assuming, but without deciding, however, that this burden rested upon him, we are of opinion that he sustained it, not as matter of law, but by a fair preponderance of the evidence. The only evidence tending to show the contrary is the testimony of the defendant's father, who, according to the testimony of the defendant, represented him in the investigation, as to the existence of an heir to Benjamin, and accepting the identification of the plaintiff as such, and for some reason not satisfactorily explained, suggested that the assignment and conveyance run to the defendant, upon the ground that defendant "had better buy it, because some one had to buy that interest, and it would not look just right for him to buy it." The defendant further testified, when asked what his father meant by that statement: "A man can use his own judgment in a question of that kind." An uncle of the plaintiff on his mother's side testified unequivocally that plaintiff's

mother and said Benjamin lived with her parents at Nos. 123 West 127th street and 332 East 119th street, as husband and wife, from about the 18th day of November, 1877, until about two months after the birth of the plaintiff; and that during said period Benjamin introduced plaintiff's mother to relatives, friends, and the neighbors as his wife, and she was known as Mrs. Cramsey; and that plaintiff was born to them at said last-mentioned residence on the 16th day of July, 1879. Another uncle to plaintiff, the brother to said Benjamin, whose interest is clearly adverse to that of the plaintiff, gave testimony substantially corroborating this evidence, and showing that, on the invitation of his brother Benjamin, he called there to see their child, the plaintiff. The testimony of another witness, one Brown, a real estate agent who was employed and paid by defendant's father to locate the plaintiff and procure the deed and assignment, clearly shows that he had knowledge of the existence of plaintiff as the son of Benjamin. The plaintiff had an interest, as the heir to his mother, to premises No. 225 East 123d street, New York, which a real estate agent named Dean had had charge of for several years for him and his uncle. According to the testimony of Dean, said Brown came to him and inquired if he knew "Edward Farrington, or a person answering to that name," and thereby the plaintiff, who, after his parents separated soon after his birth, removed with his mother's parents to Dover, N. J., and was there brought up under her name, was located, and induced to execute the assignment and conveyance.

The testimony of the defendant's father is to the effect that he never heard of the marriage of his brother-in-law with plaintiff's mother, and that at the time when, according to the other evidence in the case, they were living together as husband and wife with her parents, Benjamin was living elsewhere. When Brown first came to him, however, and suggested the existence of an heir to Benjamin, the father of the plaintiff, according to the testimony of Brown, he said: "If ever there was such a person I do not believe he is in existence now." Yet he said to Brown, in substance, that, if he found such heir, he would give $500 for his interest, and for the defendant he subsequently accepted the proof of the identity of plaintiff as such heir and paid the consideration for the transfer and also paid Brown for his services.

Plaintiff's mother held a paper which she evidently regarded as a valid certificate of marriage, certifying that she was married to said Benjamin F. Cramsey according to the laws of the state of New York at West Farms, which was just across the bridge over the Harlem from where they lived, on the 18th day of November, 1877, and she showed this to her brother within a week of that date and of the time she began to cohabit with said Benjamin. This certificate was not in the form required by the statute to make it competent evidence of the marriage; but she kept it with her private papers as religiously as if it was a valid document, and with it was found on her death a certificate of baptism, purporting to have been made by "S. S. Weed, Pastor Second Avenue and 119th Street M. E. Church," and showing baptism on the 28th day of March, 1880, of "John Edward, infant son of Frank and Ella R. Cramsey, born July 16th, 1879." Benjamin

Cramsey was known as Frank and is so designated in his mother's will.

The age of legal consent for females to marry at that time was 14 years; and, according to the undisputed evidence, the plaintiff's mother was then 16 or 17 years of age. The testimony of defendant's father, even if accepted, does not necessarily show that there was no marriage between Benjamin and plaintiff's mother, but it is somewhat inconsistent therewith. His testimony, however, is not convincing. It does not bear the impress of frankness and is inconsistent with his acts. He does not concede that he had any knowledge of acquaintance or intimacy between his brother Benjamin and plaintiff's mother, and he professes ignorance alike of their marriage and of the birth of plaintiff. He testifies that to his personal knowledge his brother resided and was elsewhere, and he specifies the places, than at the residence of plaintiff's mother's people during all the time it is claimed, upon the other evidence in the case, that they lived and cohabited together there as husband and wife. Clearly, according to his testimony, the plaintiff had no interest in the estate or premises. The plaintiff was not aware of his interest and was asserting no claim. It is not probable that, in these circumstances, the defendant's father would have encouraged Brown to find plaintiff and open negotiations for the purchase of his interest for $500, on the theory and direct recital contained in the assignment and deed that he was the sole heir of Benjamin. Defendant's father is also flatly contradicted by the testimony of the attorney of record for the plaintiff, who testifies to an admission to him of the marriage, and of the birth of plaintiff, and the expression of opinion, as he did to Brown, that the boy was dead. The evidence very satisfactorily shows that Benjamin was the father of the plaintiff—the trial court has in effect so found by finding that plaintiff did not know how to spell his own name, Cramsey—and that this was well known to the relatives and neighbors. The only question open to serious argument is the marriage of the plaintiff's parents. The evidence shows that plaintiff's father was addicted to the use of liquor, and had served a term of six months on Blackwell's Island on conviction of some crime, the nature of which is not disclosed by the record. In these circumstances, it is not surprising that his parents separated, and it is not strange that the father took no further interest in the mother and child. Nor is the evidence of the marriage impeached by the fact that the mother, on moving into a new neighborhood in another state, resumed her maiden name and let her son take her family name also, as if by adoption by her father, which was admitted upon the trial and of which there is some indication in the record.

It appears that plaintiff has never attended school and can read and write only a little. He was allowed by his mother and her parents, with whom he lived, to grow up in ignorance. These facts are relied upon by the respondent as indicating the illegitimacy of the plaintiff. We do not regard them as significant evidence on that point. There is not a word of testimony in this record to impeach the chastity or respectability of the plaintiff's mother. She never resided outside

of her parents' house. The intercourse that resulted in the birth of the plaintiff took place openly under her father's roof, and on the representation by her and Benjamin, and the assumption by the other members of the household, neighbors, and friends, that they were married. Even after the separation, which appears to have taken place at the instance of plaintiff's mother and for cause, and not upon the initiative of Benjamin, or under any claim that there was no legal obligation to remain, she was not cast out by her parents and brother, but both she and the child remained ever afterwards with them. There is no evidence tending to show that the failure to educate the plaintiff was owing to a lack of interest in him. It is quite as reasonable to infer that it was owing to a failure to appreciate the advantages of education, or other causes. The fact that plaintiff's father subsequently lived with another woman many years as his wife does not disprove the first marriage. The first may have been legally canceled, or there may have been no second marriage. The inference that there was a lawful contract of marriage between plaintiff's parents is justified and presumed from the evidence of open cohabitation as man and wife in her father's house, and her introduction to friends and neighbors under Cramsey's name and as his wife (Tracy v. Frey, 95 App. Div. 579, 88 N. Y. Supp. 874; Gall v. Gall, 114 N. Y. 109, 21 N. E. 106; Badger v. Badger, 88 N. Y. 546, 42 Am. Rep. 263; Hynes v. McDermott, 91 N. Y. 451, 43 Am. Rep. 677); and we think the finding that the contract of marriage was not proved is against the weight of the evidence.

The remaining question, which, as already intimated, it would seem should be the only question, is whether there has been sufficient proof of fraud or mistake to warrant the rescission of the deed and assignment. It has been seen that the consideration was utterly inadequate, so much so as to give rise to a suspicion, at least, that the contracts are oppressive. It clearly appears that this uneducated young man, who was without business experience, relied entirely on the representations of his real estate agent, Dean, whom Brown, representing the defendant, set in motion. These representations were made to Dean by Brown, and, although the defendant may not have authorized them all, yet, for the purposes of this action to rescind, he is chargeable therewith and cannot retain the property, the transfer of which was induced by either false or fraudulent representations. Bedell v. Bedell, 37 Hun, 419; Page v. Krekey, 137 N. Y. 312, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 731; Green v. Roworth, 113 N. Y. 462, 21 N. E. 165; Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651.

Prior to the trial, which was on November 7, 1904, the defendant had received by virtue of the assignment and deed $750.81, as his share of net rents from the premises. Material representations were made to plaintiff, on which he relied, which were erroneous, if not fraudulent, in several particulars. It was represented that the interest was in his father's instead of his grandmother's estate; that his interest was so small that he possibly would not get anything out of it; that it was perishable; that the property was mortgaged for $20,000, which was high, and the

mortgage could be foreclosed and his interest wiped out; that it was also contingent and subject to a life estate; and that he could get $500 for his interest. The defendant and Brown knew all the facts and the value of plaintiff's interest. Brown and Dean were well acquainted, and the former induced the latter to endeavor to procure an assignment of plaintiff's interest and the deed for $500. Dean, without investigation or inquiry, accepted the facts as stated by Brown, and assured the latter that the money would be very acceptable to the boy, and he felt confident that he would execute the papers. Dean communicated the substance of these representations to the plaintiff and advised him to accept the $500, and he assented. A letter from Dean to the plaintiff, printed in the record as Exhibit C, indicates that Dean and Brown had some understanding by which the former was employed to represent the defendant, or to aid Brown, and that they purposely deceived the plaintiff and induced him to refrain from even consulting his uncle, with whom he was living. The effort was successful, and plaintiff executed the papers without taking counsel or acquiring further information. He does not dispute that the deed and assignment were read over to him; but he could not read them, and apparently did not understand them, for he evidently labored under the impression that he was assigning some small interest in some insignificant estate left by his dissolute father; and it is important on this point to bear in mind that the extent of his interest in the estate and in the premises is not specified in the assignment or deed.

Taking the most charitable view of the conduct of Brown and Dean, the plaintiff was deceived by misrepresentations of material facts, is entitled to rescind on returning the amount paid and interest, which he has duly tendered, and to have the deed and assignment procured thereby canceled. Moreover, it is to be remembered that this is an action to rescind, not to reform a contract, where proof of fraud or mutual mistake is essential. It does not matter whether the information upon which the plaintiff acted was fraudulent or not. It is sufficient that, without negligence on his part, he was led to believe, and did believe, that material facts were different; and that there is no element of estoppel in favor of the defendant to lead the court to refrain from granting a rescission.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.