(68 Misc. Rep. 3.)

In re STERLING et al.

(Surrogate's Court, New York County.    May, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 35*)—REMOVAL—GROUNDS.

Where the executrices of their mother's will through the agency of a son of one of them acquired the right of the son of a deceased brother in the property by fraud, recognizing him as a son, they cannot afterward justify their conduct by alleging that he was not a son of such brother, but should on his petition be removed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–237; Dec. Dig. § 35.*]

2. TRUSTS (§ 167*)—TESTAMENTARY TRUSTEES—PROCEEDINGS FOR REMOVAL— PARTIES.

In proceedings under Code Civ. Proc. § 2817, to remove testamentary trustees, the trustees to be proceeded against only need be cited to show cause.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 167.*]

In the matter of the application for the removal of Maria P. Sterling and Hannah E. Brown, executrices under the will of Harriet Cramsey, deceased. Application for removal of executrices and trustees. Application granted.

Geo. W. Bristol, for petitioner.
Creevey & Rogers, for Maria P. Sterling.
Bergen & Prendergast, for Hannah E. Brown.

THOMAS, S. The respondents are executrices of the will of their mother, and the petitioner is the only child of their deceased brother. The adjudication of the Appellate Division of the Supreme Court (111 App. Div. 568, 97 N. Y. Supp. 1082), affirmed by the Court of Appeals, establishes that the petitioner's mother was the wife of the deceased brother of the respondents, that he is the heir at law and next of kin of the deceased brother, and that a deed of conveyance and an assignment of his interest in the estate of the decedent, executed by the petitioner to one Charles Archer Sterling, the son of one of the respondents and the nephew of the other, in 1902, for the total consideration of $500, were procured fraudulently from him, and were therefore void. The value of the property thus attempted to be transferred was about $5,000 or $6,000. It now appears that in this transaction Charles Archer Sterling acted actually, though secretly, for the respondents; that the $500 paid by him to the petitioner as a consideration for the execution of the deed and assignment, and the $300 paid to two persons who assisted in the fraud, were furnished by them; that they remained back of the transaction, directing the defense to the action brought by the petitioner to set aside these papers fraudulently obtained from him, and paying the expenses thereof, the litigation lasting until the judgment upon the remittitur of the Court of Appeals, rendered in June, 1907; and thereafter, in July, 1907, by a writing bound themselves to indemnify George Archer Sterling for all disbursements made or to be made by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

him in their behalf. Shortly after the date of the fraudulently procured papers of 1902 Mr. Charles Archer Sterling executed instruments, transferring to each of the respondents an undivided one-half of the property thus obtained, which were never recorded, and subsequent events rendering them of no value they were destroyed. In the procuring of the deed and assignment some part of the money used by the respondents was money of the petitioner in the hands of the respondents as trustees, and some of the money used in the expenses of the litigation was also trust funds in which the petitioner had an interest.

The present application is to remove the respondents as trustees. The facts recited are in my opinion abundantly proved. It is contended for the respondents that they believed upon reasonable grounds that the petitioner was illegitimate, and that for all they did this belief furnishes a sufficient justification. I agree that a strong belief of that kind may explain why the improper acts of the respondents were performed, but it cannot make those acts right or honest. It must be remembered that the transaction did not take the form of the extinguishment of a claim to rights as an heir, made by the petitioner and denied by the respondents. If that had been the case the petitioner would have been put upon inquiry to determine the question for himself as to whether the weakness of his proof of his mother's marriage and of his own legitimacy did or did not require him to accept less than one-tenth of the value of his interest in the estate for a release of the whole. The respondents, on the contrary, having knowledge of the petitioner's existence, searched him out, informed him that he had rights, but tricked and deceived him as to their value; prepared documents for his signature in which the fact that he was the legitimate child of his father was recited; demanded and received from him an affidavit of his birth and identity; taught him how to sign his real family name to these documents; and then paid him an utterly inadequate consideration therefor, such consideration being in part, at least, made up of trust funds in their hands in which he had an interest. Their agents led him to think that they believed him legitimate. I am of opinion that they did believe him legitimate, and the evidence in this proceeding is in accord with the solemn judgment of the Court of Appeals that he is legitimate. To deal with him as legitimate, secretly planning to justify their evil treatment of him by asserting his illegitimacy, was not honest. The respondents were trustees and owed trust duties to the petitioner. The petitioner was also a tenant in common with them in the real property in this city. He was a party interested in "the estate," and no transaction was possible "for the benefit of the estate" which could not benefit him. To say that the respondents could acquire his rights "in the estate" at a sum absurdly under their value, for the benefit of themselves and other parties in interest, and that such a transaction could properly be said to be for the "benefit of the estate," is nonsense. And when it is shown that such a transaction was made, and that it lacked the elements of ordinary fairness essential to the validity of a sale between strangers, and that the

respondents were parties to it, I am unable to see how I can impute innocence or lack of intentional wrong to them. As it appears to me, it was a fraud, requiring the inference that its perpetrators are dishonest and unfit to act as trustees. The use by the respondents of trust funds in which the petitioner had an interest, that fact being concealed from the petitioner to induce a transfer by him of his share in the trust fund to other persons, was an "improper application of the money and property in their charge," and was "misconduct in the execution of their trust," and leads to the same inference. Code Civ. Proc. § 2817. And when we learn, as we do in this case, that the trustees claimed the benefits of this beautiful scheme for themselves, and fought for it to the end, we merely emphasize the result.

I cannot agree that the respondents are entitled to any consideration, because after all of the litigation had the courts have decided correctly, and the heir has in part come into his own. The restitution was long delayed, and does not afford complete indemnity for the expenses of the contest and the assaults upon his mother's memory and his own legitimacy.

The objection that other parties are not joined to the proceeding must be overruled. The statute under which the surrogate acts requires only that the testamentary trustee proceeded against shall be "cited to show cause." Code Civ. Proc. § 2817.

The application is granted, with costs, to be paid by the respondents personally.

Application granted, with costs.