McDERMOTT *v.* HARRISON *et al.*

*(Supreme Court, General Term, First Department.* February 14, 1890.)

1. CORPORATIONS—SUBSCRIPTION TO STOCK—RESCISSION FOR FRAUD.
     A subscription to stock which has been obtained by fraudulent representations on the part of the promoters of the corporation, who afterwards become directors thereof, may be annulled by the subscriber, if he rescinds promptly, and before the rights of creditors or subsequent stockholders have accrued.

2. SAME—RATIFICATION OF ACTS OF DIRECTORS.
     Where a subscription to the stock of a manufacturing corporation is claimed to have been obtained by false representations, and a resolution is passed by the board of directors canceling the subscription, and under such resolution the subscribers return to the company their stock certificates, four years' acquiescence by the corporation in the action of the board operates as a ratification thereof, even though it was *ultra vires.*

Appeal from circuit court, New York county.

Action by George A. McDermott, as receiver of the National Ammonia Company, against John Harrison and others. There was a verdict for defendants. Plaintiff appeals from the judgment entered thereon.

Argued before VAN BRUNT, P. J., and CULLEN, J.

*Edward C. James,* for appellant. *Michael H. Cardozo,* for respondents.

CULLEN, J. This is an appeal from a judgment for the defendants entered upon the verdict of a jury at circuit, and also from an order awarding the defendants an extra allowance of $2,000. The action is brought by the plaintiff, as receiver of the National Ammonia Company, to recover the sum of $44,000 on the subscription by the defendants to the capital stock of that company, and also for damages for a breach of a contract made between the defendants and the Ammonia Company for the erection of works, and the manufacture and sale of the company's products. On the trial the latter claim seems to have been abandoned; at least no evidence of damages for its breach was given. The facts of the case are substantially as follows: A corporation known as the "City Chemical Company" was engaged in the manufacture of *aqua ammonia,* and was the owner of patents covering a particular process of manufacture. The defendants were manufacturing chemists, dealing in, but not manufacturing, *aqua ammonia.* In May, 1880, the defendant sentered into an agreement with the City Chemical Company, whereby the former agreed to take the whole product of the company at a stipulated price, the defendants accepting the drafts of the company for the product as it was manufactured. Business was done under this contract until August, in the same year, at which time one W. W. Post (who, in the absence of his brother Eugene Post, the secretary and treasurer of the company, assumed to act as

the general manager of the City Chemical Company) suggested to the defendants the formation of a new company for the manufacture of *aqua ammonia.* It was then agreed that such new company should be formed, with a capital of $100,000; the property of the City Chemical Company to be turned over to the new company at $56,000, for which stock of that amount was to be issued to the stockholders of the City Chemical Company. The remaining $44,000 was to be issued to the defendants, who, in consideration therefor, were to erect works at Philadelphia, and provide for certain facilities for the sale and manufacture of the product. This agreement was carried out, the defendants advancing $6,900 to Post to purchase the interest of some stockholders of the City Chemical Company, who it was represented would not assent to the transfer. Under this arrangement, the National Ammonia Company was formed, and the property and patents of the City Chemical Company transferred. Question being made as to the legality of the issue of the $44,000 in stock to the defendants in consideration of their contract, they made a direct subscription of that amount to the capital stock of the ammonia company, and thereupon an agreement was made between that company and the defendants by which the $44,000 paid on the subscription was repaid to the defendants in consideration of their contract to furnish the works. The National Ammonia Company was organized September 19, 1880. On November 10, 1880, was made the transfer to it by the City Chemical Company. On October 18, 1880, was made the contract with the defendants for the erection of the works. In December, 1880, the defendants claimed that false representations had been made to them as to the results to be obtained from the patented process, and insisted on the rescission of their contract, and of their subscription to the company's capital stock. On the 19th of December a resolution was passed by the directors of the company, in effect canceling the contract and the defendants' stock subscription. Under that resolution, the defendants returned to the company their stock certificates. The National Ammonia company never proceeded further to do business. In March, 1885, in an action brought by one of its stockholders, a decree was entered dissolving the company, and appointing the plaintiff its receiver. There appear to have been no creditors of the company.

The facts as to the alleged fraud practiced on the defendants, as found by the jury in their special findings, are these: Post represented to the defendants that the patented process held by the City Chemical Company was producing and had produced seventeen or eighteen hundred pounds of *aqua ammonia*, 20 deg. Beaume, for 1,000 pounds of sulphate ammonia. To ascertain the truth of that statement, tests were made by the defendants' chemist, who witnessed trials at the company's works. At these trials the results represented were apparently produced, but these results were obtained by secretly packing sulphate of ammonia in the retort in which the experiment was had, before it was charged in the presence of the defendants' chemists, and also by weighting the hydrometer so as to falsify the strength of liquor it would indicate. The jury also found that the defendants agreed to subscribe to the capital stock of the ammonia company, and to erect the works in reliance on the representation of the product obtained by the patented process, and that such representations were false, and made to defraud the defendants, and so made with the authority and consent of the City Chemical Company.

As the jury have made specific findings of the fraud practiced on the defendants, it is not necessary to examine the charge of the learned trial judge as to what facts would authorize the jury to render a general verdict for the defendants. It is sufficient to sustain this judgment if the special findings entitled the defendants to the verdict, and no error was made by the trial judge in the charge as to such findings. The theory of the plaintiff is that the resolution of December, 1880, releasing the defendants from their sub-

scription, was illegal and void. If the defendants had the right to rescind their contract of subscription, there can be no doubt that the action of the corporation in releasing them from that subscription was valid. The first question presented, then, is, did the fraud on the part of the City Chemical Company, its officers and agents, relieve the defendants from their subscription? It may be said that the corporation ordinarily has no power to release the subscriber. But fraud vitiates all contracts, and a contract of subscription to stock of a corporation is not an exception to the rule, except so far as the rights of creditors and third parties are concerned. "It may be stated as a general rule that, if a subscription for shares was obtained by fraudulent representations, it may be annulled by the subscriber at any time before other equities have intervened." Mor. Priv. Corp. § 94. In all the cases where fraud has been held to be no defense to an action on subscription for stock, rights of creditors or others have attached. But if the party defrauded rescinds promptly, and before the equities of creditors have intervened, his right to relief is clear. It is objected that in this case the fraud was practiced, not by the corporation, for it was not in being at the time of the representations, but by its promoters; and it is contended that, as the contracts of the promoters do not bind the corporation, the corporation is not liable for their frauds. It may be doubted whether the rule that the promoters cannot bind a corporation, subsequently to be formed, applies to mere trading corporations, like the ammonia company. In the case of *Munson* v. *Railroad Co.*, 103 N. Y. 58, 8 N. E. Rep. 355, where it was held that the contract of the promoters did not bind the corporation, the corporation was a *quasi* public one, (a railroad company,) which contemplated the exercise of the judgment of its board of directors as to the location of its route, and the acquisition of property in the interest of the public as well as for its own private advantage. But in *Lorillard* v. *Clyde*, 86 N. Y. 384, an agreement between two owners of steamships to organize a corporation to which their property was to be transferred, and providing for its management, was held valid.

We think that in this case we should pierce through the mere legal shell of the corporation, and look at the real parties in interest,—those who were to own its stock. These were the City Chemical Company,—for the transfer of the stock to the stockholders of that company was the same as a transfer to the company itself,—and the defendants. The agreement to form a corporation was not an agreement to carry on manufacturing business generally, but to do a particular business in a certain specific manner. Had the corporation feature been omitted, plainly that agreement could have been rescinded on account of fraud. Till the rights of creditors attached, or by dealings in the stock rights of subsequent stockholders accrued, the real parties in interest were the stockholders, and we see no reason why the City Chemical Company should be able to hold the defendants to a contract obtained by fraud, simply because that contract provided for carrying on business under a corporate management. But even if the general rule as to the connection between promoters and corporations applies to a company like this, on the facts found by the jury the defendants were entitled to avoid their subscription. While corporations are not liable for the contracts of their promoters without action on their part, still they may adopt and ratify such contracts, and thereupon they become liable. The subscription of the defendants to the ammonia company's stock was not a new and independent one, but was made in pursuance of the previous agreement entered into with the City Chemical Company. That agreement the jury have found to have been obtained by fraud. The corporation could not retain the benefits of that agreement, and repudiate the liability for the fraud committed by the agents who obtained that agreement. Its receipt and retention of the fruits and product of the fraud involve the liability on account of it, although innocent of personal participation in the wrong. *Krumm* v. *Beach*, 96 N. Y. 398. The

corporation necessarily had knowledge of the fraud. The officers of the corporation consisted of but two classes,—those who committed the fraud, and those who were defrauded by it,—and knowledge in the former class was knowledge in the corporation. We are of opinion, therefore, that on the special verdict the defendants were entitled to recover. We also are of opinion that the defendants were entitled to the direction of a verdict on the undisputed facts of the case, on the ground of ratification. Assuming that the action of the board in December, 1880, was *ultra vires,* the corporation or aggrieved stockholders were bound to promptly repudiate it. Instead of any movement to that end, for over four years they acquiesced in that action. The defendant's certificates of shares were returned to the corporation, and received by it, and never tendered back till after the plaintiff was appointed receiver. This lapse of time and acquiescence operated as a ratification of the action of the trustees, relieving the defendants from their subscription, (*Sheldon Hat Blocking Co.* v. *Eickmeyer Hat Blocking Co.*, 56 How. Pr. 70, 90 N. Y. 607; *Kent* v. *Mining Co.*, 78 N. Y. 159;) and, no creditor having any equities, the receiver has no greater rights than the corporation itself, (*Billings* v. *Robinson,* 94 N. Y. 415; *Cutting* v. *Damerel*, 88 N. Y. 410.) Therefore, on both grounds, —the special findings of the jury as to the fraud, and the conceded facts as to delay in acquiescence,—the defendants were entitled to the verdict, and the judgment appealed from should be affirmed, with costs. The suit is to recover $44,000. The transactions out of which it springs are involved and complicated. The allowance made was within the power of the trial judge, and the facts do not show that his discretion in awarding an allowance was improperly exercised. This order should also be affirmed.