### CAWTHRA v. STEWART et al.

(Supreme Court, Special Term, New York County. April 8, 1908.)

1. PLEADING—DEMURRER—ADMISSIONS BY DEMURRER.

The allegations of a complaint, demurred to, must, for the purpose of the demurrer, be assumed to be true.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 525–534.]

2. CORPORATIONS—FRAUD BY OFFICERS—ACTIONS AGAINST CORPORATIONS—COMPLAINT—SUFFICIENCY.

A complaint in an action against a corporation for fraudulent representations, made by an individual, which alleges that the individual owned 98 shares of the stock of the corporation and controlled the remaining 2 shares, and that he was a director of the corporation and its president, need not allege the agency of the individual to act for the corporation; the individual being in reality the corporation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2021–2023.]

3. SAME—LIABILITY FOR FRAUD.

An individual owned 98 shares of the stock of a corporation and controlled the remaining 2 shares, and was a director and its president. He made fraudulent representations to a third person, and the corporation accepted and retained the proceeds of the fraud with knowledge thereof. *Held*, that the corporation could not avoid liability on the ground that it did not know of the fraudulent representations until after they had been made, and that it did not authorize the making of them, since it in effect ratified the acts of the individual.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1714.]

4. SAME—REMEDY.

One induced by the fraud of the president of a corporation, who owns and controls its entire stock, to subscribe for stock, may sue the corporation for a rescission of the contract and for a recovery of the amount paid for the stock.

5. SAME—ACTION—PLEADING.

One suing a corporation for a rescission of a stock subscription contract and for a recovery of the amount paid for stock, on the ground

of fraudulent representations made by an officer of the corporation, need not allege in the complaint a tender of the stock to the corporation and a demand for a return of the sum paid; the action not proceeding as on, but for, a rescission, and it being possible to provide in the judgment for the surrender of the stock.

Action by Thomas A. Cawthra against Leonard C. Stewart and another. Heard on demurrer by defendant Leonard C. Stewart & Co. to the amended complaint, on the ground that it did not state facts sufficient to constitute a cause of action. Overruled.

Shepard, Smith & Harkness (Wm. H. Harkness, of counsel), for plaintiff.

Robertson, Harmon & Davies (Charles F. Davies, of counsel), for defendant L. C. Stewart & Company.

GIEGERICH, J. The action is to rescind a contract for the purchase of stock in the defendant L. C. Stewart & Co. on the ground of the misrepresentations made by the defendant Leonard C. Stewart, to recover back the moneys paid, and to strike the plaintiff's name from the list of stockholders contained in the defendant corporation's books. The facts alleged in the amended complaint are as follows: The defendant L. C. Stewart & Co. is a domestic corporation engaged in the business of compiling and publishing trade journals and directories, with an authorized capital stock of $10,000, divided into 100 shares of the par value of $100 each. The defendant Leonard C. Stewart was at the times hereinafter mentioned and still is the president and a director of the said corporation, and was at all times on and between October 8, 1907, and October 18, 1907, the owner of 98 shares of the capital stock of the said corporation and in control of the remaining 2 shares thereof. On or about October 8, 1907, the defendant Stewart, for the purpose of inducing the plaintiff to purchase from him part of such stock, both orally and in writing, represented that of the $10,000 capital stock of the defendant corporation $1,000 had been paid in by persons described as Redfield Bros. and $1,000 by him (the defendant Stewart); that subsequent payments aggregated nearly $1,000, and that the total amount expended in furthering the business of the said corporation was $3,000; that of the company's assets the actual contracts showed a face value of $335; and that the actual subscriptions to the publications of the defendant corporation aggregated about $400. When such representations were made the defendant Stewart proposed to the plaintiff that the latter should put into the business of the defendant corporation an amount of money equal to that which the defendant Stewart represented had already been put in, to wit, $3,000, and that the plaintiff should take from the defendant Stewart in consideration thereof 49 per cent. of the entire capital stock of the company. This proposition was afterwards modified to the extent that the plaintiff should, in consideration of the $3,000, receive from the defendant Stewart 50 shares of the stock, instead of 49. The amended complaint further alleges that the foregoing representations were false; that no part of the capital stock was paid in money, but the entire capital stock was issued for lists and data assigned and information furnished by the defendant Stewart to the defendant corporation; and that the entire amount expended in furthering the business of the company

was not as much as $2,000; that the actual advertising contracts of the defendant corporation did not show a face value of more than $282.50; that the representations so made by the defendant Stewart were known by him to be false, or were made recklessly, without knowledge whether they were true or false, without care as to what the facts might be, and without heed to the injury which might ensue, and were made to induce the plaintiff to purchase such stock of the defendant corporation; that the plaintiff, in ignorance of the falsity of the representations so made, and still believing them to be true, thereafter entered into the contract set out in the amended complaint to purchase 50 shares of the said stock, and thereafter paid to the defendant Stewart $1,000 in part payment of the purchase price, and received 50 shares of said stock; that said last-mentioned sum was paid by the latter into the treasury of the defendant corporation; that within a few days after the making of the contract and said payment the plaintiff requested the defendant Stewart to give him certain information as to the moneys previously received by and expended for the defendant corporation, which the latter refused to give; that on or about the 26th day of October, 1907, the plaintiff discovered the aforesaid fraud; that two days after such discovery he notified the defendant Stewart in writing, that he elected to rescind the contract, tendered back the 50 shares of stock, duly indorsed, for transfer to the defendant Stewart on the books of the defendant corporation, and demanded repayment of said $1,000, with interest from the date of payment, which tender and demand were in all respects refused. The relief asked against the defendant corporation is that the contract be rescinded and canceled, that the name of the plaintiff be stricken from the list of stockholders contained in its books, and that it be directed to repay the plaintiff the sum of $1,000 so received by it, with interest. The defendant corporation demurs to the amended complaint on the ground of insufficiency.

It is urged in behalf of the demurrant that it is not a party to the contract in suit, that the defendant Stewart was not its agent, and that it had no part in the fraud; in other words, that the defendant Stewart is one person, and that the defendant corporation is an entirely separate, distinct, and definite legal entity, and is not bound by or liable for any acts or omissions of the former which it has not authorized. As already stated, the complaint alleges, which for the purposes of the demurrer must be assumed to be true, that the defendant Stewart owned 98 shares, owned or controlled the remaining 2 shares, and was the president and a director of the defendant corporation. It thus appears that the defendant Stewart was in reality the corporation itself. As was said by the court in Re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609, 613:

"The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud."

The same view was expressed in People v. North River Sugar Refining Co., 121 N. Y. 582, 615, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843, Anthony v. Am. Glucose Co., 146 N. Y. 407, 413, 41 N. E. 23, and McDermott v. Harrison, 56 Hun, 640, 9 N. Y. Supp. 184.

The defendant corporation cannot escape liability for the defendant Stewart's fraud on the ground that his agency to act for it has not been alleged. No information or notice could well be given to the defendant corporation, except through him, its president, director, and sole owner. While no formal authority appears to have been given to him to make the false representations referred to, yet the corporation accepted and still retains the proceeds of the fraud, with full knowledge of the circumstances, and consequently it may fairly be said that there was a ratification of the acts of the defendant Stewart. 2 Clark & Marshall, Priv. Corp. p. 1463, § 470. The defendant corporation, therefore, cannot avoid liability on the ground that it did not know of the fraudulent representations until after the contract in suit was made, or that it did not authorize the defendant Stewart to make them. It has since learned that they were made, and by retaining the money, which was so obtained, with knowledge of the facts, it has ratified his acts, as well as the representations which induced the plaintiff to part with his money, and is liable for its return. Cramsey v. Sterling, 111 App. Div. 568, 97 N. Y. Supp. 1082, affirmed in 188 N. Y. 602, 81 N. E. 1162; Garrison v. Technic Electrical Works, 55 N. J. Eq. 708, 37 Atl. 741. The misrepresentations of the defendant Stewart are therefore imputable to the defendant corporation, and under the authorities, and in the circumstances above detailed, this action in its present form may be maintained against it.

Although I have considered the case so far as though the corporation and Stewart were distinct, and shall continue to do so for convenience and for the advantages of analogy to other cases, it might be observed that, strictly speaking, such terms as "authority" and "ratification" and others which imply separate personalities are inappropriate. We do not have a case of agency, but of identity. It cannot properly be said that the corporation could clothe Stewart with authority any more than that Stewart could clothe himself with authority. He was the corporation, and it was only another form of him. Whatever he did with respect to the matters he was handling under the guise of a corporation was the act of the corporation.

Passing now to a consideration of the form of the relief, it was held in Bosley v. National Machine Co., 123 N. Y. 550, 25 N. E. 990, that where a person has by fraud been induced to subscribe for the stock of a company he may bring an equitable action against the company to procure a rescission of the contract, a cancellation of his subscription, and the removal of his name from the books of the company. In that case the opinion very clearly points out the reasons why the courts have held that an action brought in the form of this is proper. It was held in Mack v. Latta, 178 N. Y. 525, 71 N. E. 97, 67 L. R. A. 126, that the person perpetrating the fraud might be joined as a defendant with the corporation in one action, and the court after referring to the decisions in this and other states, at page 535 of 178 N. Y., page 100 of 71 N. E. (67 L. R. A. 126), says:

"These decisions seem to me so well grounded in reason as to justify a court of equity—invoked to cancel a subscription for stock on the ground of fraud, and enjoin further calls for payment, and the prosecution of actions thereon—in bringing in the officers and agents of the corporation who were personally

guilty of making the representations constituting the fraud, so that the plaintiff may have complete relief in one action against both the corporation and the persons guilty of the fraud."

In the case of Garrison v. Technic Electrical Works, supra, where the facts were similar to those in the present case, Vice Chancellor Gray, at page 720 of 55 N. J. Eq., page 745 of 37 Atl., makes the following very pertinent remarks:

"In this state, in just such a case, the rule is stated in the broadest terms. If such contracts are induced by fraud, they create no obligation, and the injured party has a right to have them abrogated. Vreeland v. New Jersey Stone Co., 29 N. J. Eq. 189. In that case the fraud by which the subscription was obtained consisted of a false representation made by a single director in the presence of other directors at a directors' meeting, but upon which no corporate action whatever was taken. The complainant was held to be entitled to have his contract of subscription abrogated and a decree for the return of his money, not only against the company, but also against all the directors who were present, and the Court of Errors and Appeals (29 N. J. Eq. 651) unanimously approved the decree."

Counsel for the demurrant seeks to distinguish the case of Mack v. Latta, supra, on the ground, so far as I can gather from his brief, that the liability of the defendant corporation was not involved in that case. That he is in error is apparent from the following excerpt from the opinion of the court (page 528 of 178 N. Y., page 98 of 71 N. E. [67 L. R. A. 126]):

"As we have seen, the action will lie as brought against defendant corporation, and our inquiry must be whether equity should bring in the individual defendants whose misrepresentations have compelled plaintiff to bring the suit in order to relieve himself of a further payment of $400,000 and to recover the $100,000 already paid."

It is further urged in support of the demurrer that the pleading is insufficient in substance, because it does not allege that the plaintiff has tendered the stock to the defendant corporation and demanded from it the return of the $1,000. The demurrant has not cited any authorities in support of this contention. The fact is the cases are to the contrary. Thus, in Halpin v. Mutual Brewing Co., 20 App. Div. 583, 590, 47 N. Y. Supp. 412, it was held that:

"The proper course in equity, in cases where the plaintiff seeks the rescission of a contract under which he has received property, is to offer in the complaint to restore it to the defendant; but such an offer is not indispensable. The court in its decree may provide for restitution as a condition of granting the desired relief."

In Gould v. Cayuga Co. Nat. Bank, 86 N. Y. 75, 83, the court said:

"But the defrauded party need not rescind and sue in an action at law for the consideration parted with upon the fraudulent contract. He may bring an action in equity to rescind the contract, and in that action may have full relief. Such an action does not proceed as upon a rescission, but proceeds for a rescission. In such a case it is sufficient for the plaintiff to offer in his complaint to restore to the defendant what he has received, and the rights of the parties can be fully regulated and protected in the judgment to be entered. Such was the case of Allerton v. Allerton, 50 N. Y. 670."

The rule laid down in the case last cited was followed in Harris v. Equitable Life Assurance Soc'y, 64 N. Y. 196, 200, where the court said:

"In Allerton v. Allerton, 50 N. Y. 670, this court held that the rule that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good a condition as that in which he was when the agreement was made, is satisfied if the judgment asked for will accomplish that result, and in such case no offer to return that which was received is necessary."

In Leather Manufacturers' Bank v. Merchants' Bank, 128 U. S. 26, 9 Sup. Ct. 3, 32 L. Ed. 342, the court, after reviewing a number of authorities, said:

"Wherever money is paid upon the representation of the receiver that he has either a certain title in property transferred in consideration of the payment, or a certain authority to receive the money paid, when in fact he has no such title or authority, then, although there be no fraud or intentional misrepresentation on his part, yet there is no consideration for the payment, and the money remains, in equity and good conscience, the property of the payor, and may be recovered back by him, without any previous demand, as money had and received to his use."

Under the authority of these cases it was not necessary for the plaintiff to make tender to or demand upon either of the defendants, or even to make offer of restitution in his complaint, because a court of equity has full control over the entire controversy, and will in its decree make provision for proper restitution by the plaintiff as a condition of granting him relief, and thereby put the defendant in statu quo without any offer or assent by the plaintiff. The claim that the plaintiff fails to show himself entitled to any relief against the corporation, either ex contractu or ex delicto, loses sight of the fact that the removal of his name from the former's books as a stockholder is sought. This is a form of relief which he is entitled to under the Bosley Case.

My conclusion is that the false representations which induced the plaintiff to enter into the contract in question and to pay said sum of $1,000 are imputable to the defendant corporation, and that hence the complaint sets up a good cause of action against it for the relief sought.

The demurrer to the amended complaint is therefore overruled, with costs, with leave to withdraw the demurrer and to answer within 20 days upon payment of such costs.