LINN & LANE TIMBER CO. et al. v. UNITED STATES (two cases).

UNITED STATES v. SMITH et al.

(Circuit Court of Appeals, Ninth Circuit.   May 20, 1912.)

Nos. 1,972, 1,973.

1. CORPORATIONS (§ 507*)—PROCESS AND NOTICE—SUIT TO CANCEL PATENTS
—LIMITATION—FRAUDULENT CONVEYANCE TO CORPORATION—SERVICE ON
OWNER OF STOCK.

Public lands fraudulently acquired under the Stone and Timber Act
were conveyed by the purchasers as soon as final proof was made to vari-
ous persons in trust for an individual defendant who was charged with
knowledge of the fraud.   Such defendant later organized a holding cor-
poration under the laws of another state to which he caused the lands
to be conveyed in exchange for its capital stock, all of which was is-
sued to him except two shares of $100 each, one of which was issued to
his wife and one to his attorney.   He was elected president, and all of
the officers and directors were members of his family.   The deeds to
the corporation were withheld from record, and in fact were not deliv-
ered to the corporation, but were retained by such defendant.   Suits were
brought by the United States to cancel the patents, and service was made
on such individual defendant within the six years' limitation period pre-
scribed for such suits by Act March 3, 1891, c. 559, 26 Stat. 1093; but
the corporation was not at that time made a party, its existence or in-
terest in the lands being unknown to the government officers.   It was
later brought in and served, but after the running of the period of lim-
itation.   Held, that for the purposes of the statute in such case the cor-
poration and such individual defendant were identical, and that the
service on him bound the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1971–2000;
Dec. Dig. § 507.*]

2. CORPORATIONS (§ 1*)—SEPARATE ENTITY—DISREGARD OF DOCTRINE IN EQ-
UITY TO PREVENT FRAUD.

The doctrine of the separate legal entity of a corporation, as distin-
guished from its members, cannot be invoked in a court of equity as a
cover for fraud; but in such case the court will look beyond the cor-
porate form to the purpose of it, and whatever would be binding upon
the persons composing it will be held binding upon the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1, 3–6; Dec.
Dig. § 1.*]

3. LIMITATION OF ACTIONS (§ 100*)—WHEN LIMITATION BEGINS TO RUN—
FRAUD—WITHHOLDING DEED FROM RECORD.

The fact that a deed is withheld from record or is otherwise concealed
is a badge of fraud, and when accompanied by other evidences of fraud-
ulent intent will prevent the statute of limitations from running in favor
of the grantee against a suit affecting the property during such conceal-
ment.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
323, 480–493; Dec. Dig. § 100;* Fraudulent Conveyances, Cent. Dig. §§
733, 734.]

4. PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENTS—DEFENSES
BY CORPORATION.

A corporation, which is not itself an innocent purchaser of land fraud-
ulently acquired from the United States, cannot defend a suit by the
government for cancellation of the patents on the ground that stockhold-
ers purchased their stock in good faith and in ignorance of the fraud, or
that its stock has been pledged as security for loans.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335;
Dec. Dig. § 120.*]

Appeal from the Circuit Court of the United States for the District of Oregon.

Suits in equity by the United States against the Linn & Lane Timber Company, Charles A. Smith, Frederick A. Kribs, Charles J. Swenson, O. Judd Mealey, Richard F. Malone, William J. Lawrence, Alexander Gould, John J. Gilliland, Louis Maynard, Joseph O. Mickalson, James W. Rozell, John Thomas Parker, Samuel D. Pickens, Sidney H. Scanland, Joseph H. Steingrandt, Cornelius N. Tuthill, Richard D. Watkins, Charles Wiley, and William W. Billings. From the decree in the first suit, both parties appeal; and from the decree in the second, defendants appeal. Affirmed.

For opinion below, see 181 Fed. 545.

These suits were brought by the government to obtain decrees annulling patents theretofore issued for certain lands entered under the act of Congress known as the Timber and Stone Act. Act June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545).

Case numbered 1,972 involved 17 patents, each covering a quarter section of land situated in Linn county, Or. Eight of those patents were issued July 9, 1902, and nine of them August 12, 1902.

Case numbered 1,973 involved 28 patents, each covering a quarter section of land in the same county and state, all of which patents were issued August 12, 1902.

The suits were commenced in the court below on May 25, 1908.

For the lands covered by the patents involved in case 1,973, the filings were made in January and February, 1900, and final proofs were made in April and May of the same year; all of the land covered thereby being at the time of, or within a few days after, the making of final proof conveyed by the applicants to one Willd in trust for the defendant C. A. Smith. Willd thereafter, and on November 2, 1900, conveyed the same land to one Greacen, who on February 11, 1901, conveyed it to one Rogers, who on December 21, 1904, conveyed it to one Werner—all in trust for the defendant Smith, and all of which deeds were at the time of their execution placed of record, the legal title to the land standing in the name of Werner from the time of the conveyance of it to him until subsequently conveyed by him to the defendant Linn & Lane Timber Company, as hereinafter stated.

The entries involved in case 1,972 were made in May, June, and July, 1900, and final proof was made in August and October of that year, about which time the land covered by them was conveyed by the several applicants to the defendant Kribs in trust for the defendant Smith—an undivided three-fourths of which Kribs, on the 24th of October, 1904, conveyed to Smith, and on December 28th of the same year conveyed the other undivided one-fourth to one Swenson in trust for Smith—all of which deeds were at the time of their execution filed for record. Subsequently those lands were also conveyed to the Linn & Lane Timber Company as hereinafter stated.

The defendant Smith, who was a manufacturer of lumber at Minneapolis, Minn., had previously acquired about 52,000 acres of other timber lands in Linn, Lane, and Douglas counties of the state of Oregon. In May, 1906, he caused to be organized under the laws of the state of Minnesota the defendant corporation called Linn & Lane Timber Company, with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each, for the purpose of taking and holding the title to the lands involved in these suits as well as the 52,000 acres theretofore acquired by him. Nine hundred and ninety-eight shares of the stock of the corporation were subscribed by Smith, and one share each by his wife and his attorney. The corporation was organized by the election of Smith as president; Johanna Smith, his wife, as vice president; Vernon Smith, his son, as secretary; and Nan A. Smith, his daughter, as treasurer. Thereafter, and on June 4, 1906, Smith tendered to the directors of the corporation, consisting of himself, his son, and his wife, a deed executed by himself and wife, covering all of his lands in the coun-

ties mentioned, in payment for the stock of the corporation; and on May 28 and August 15, 1907, respectively, Swenson and Werner, at Smith's request, conveyed the interests held by them to the same corporation, all of which deeds to the corporation were retained by Smith and not filed for record in the proper county until September 9, 1908, more than six years after the issuance of the patents involved in the present cases.

To the original bill in case 1,972, C. A. Smith, Frederick A. Kribs, Charles J. Swenson, and various other individuals were made defendants, and in case 1,973 Smith, Kribs, Werner, and various other individuals were made parties defendant. Both bills charged that all of the entries were made in pursuance of a conspiracy, specifically set out, to defraud the government of the title to the lands covered thereby, and that Smith acquired the title to the lands involved with notice of such fraud. Subpoenas ad respondendum were issued upon the filing of the bills and placed in the hands of the marshal for service, and were in due time served upon the resident defendants. Smith, Swenson, and Werner were nonresidents of the state of Oregon, and in July following the filing of the bills the marshal returned the subpoenas without service upon them. On the 27th of that month, upon the application of the United States attorney, a warning was issued to them, which was subsequently served. In September and October, 1908, Smith, Kribs, and Werner filed pleas in abatement, alleging that the property in question had been conveyed to and was owned by the Linn & Lane Timber Company prior to the commencement of the suits, and that it was therefore an indispensable party. On November 16, 1908, the complainant filed an amended bill in each suit, making that company a party defendant, and subpoena was thereupon issued and placed in the hands of the marshal for service upon its resident agent, and service duly made. The amended bills contained substantially the same allegations as the original bills, and the additional allegation that the Linn & Lane Timber Company was organized by C. A. Smith to consummate the fraudulent acquisition of title to the lands in question; that the deed from himself to the company was not in fact made until after the commencement of the suits, but was fraudulently antedated; and that all of the deeds were concealed and kept from record in pursuance of such fraudulent purpose. To the bills as amended answers were filed denying all of the averments of fraud and setting up as affirmative defenses that Smith and the Linn & Lane Timber Company were purchasers of the property in good faith and without notice of any fraud; that the decision of the Secretary of the Interior directing that the applications for the lands pass to patent is conclusive on the government; and that the suits are barred by the statute of limitations because not commenced against the Linn & Lane Timber Company within six years from the date of the patents. Replications were filed in due time, and upon the issues joined the evidence was taken before the court below, upon which the judgments appealed from were given.

John McCourt, U. S. Atty.

Lind, Ueland & Jerome, of Minneapolis, Minn., for defendants

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] A careful consideration of the record satisfies us that the learned judge of the court below was quite right in finding that all of the entries in question were fraudulent, and the proofs in support of them false and fraudulent, and in holding that the defendant C. A. Smith, if not actually cognizant of the conspiracy in pursuance of which the entries and proofs were made, was at least bound by the acts of his agent, Kribs, who, according to the evidence, was an active participant in the frauds upon the government. Smith therefore cannot be regarded as an innocent purchaser. He acquired, directly and through trustees, the title to all of the lands covered by the patents issued pursuant to the entries

and proofs referred to, and afterwards, as the records show, conveyed and caused to be conveyed such title to the Linn & Lane Timber Company, a Minnesota corporation, which he caused to be formed, himself subscribing for all of its capital stock with the exception of two shares, one of which was issued to his wife, and one to his attorney. That the legal title to all of the lands passed to the Linn & Lane Timber Company by virtue of the deeds executed to it is undisputed, and that that company was not made a party to the suits until more than six years after the issuance of the patents is also shown by the records. The important question in the cases, therefore, is whether the company's plea of the statute of limitations should be sustained. The court below sustained it in respect to the lands covered by the eight patents which were issued July 9, 1902, on the ground that six years had run before suit could be considered as having been commenced against C. A. Smith, but not so with respect to the other patents involved. Treating Smith as the corporation, and the corporation as Smith, the court held that, as respects all the patents that were issued within six years of the commencement of suit against Smith, the plea of the statute was unavailing, saying, in its opinion:

"As a general rule the holder of the legal title is an indispensable party to a suit to set aside a patent (U. S. v. Winona & St. P. R., 67 Fed. 948, 15 C. C. A. 96; U. S. v. C. P. R. R. [C. C.] 11 Fed. 449), and the statute of limitations does not cease to run in his favor until he is made a party to the suit, and process issued and placed in the hands of the marshal with a bona fide intent that it shall be served. Miller v. McIntyre, 6 Pet. 61, 8 L. Ed. 320. But the identity of Smith and the Linn & Lane Timber Company, and their relation to the title to the property in controversy, is such that I do not think the rule should be applied in this case. Smith is the real party in interest and the beneficial owner of the property. The corporation was organized by him as a mere holding concern. He owned all of its capital stock. He and the members of his family composed its board of directors, and were the officers of the corporation. In fact, Smith was the corporation, and the corporation was Smith. The question of the statute of limitations should be therefore determined by the time the suit was commenced against Smith and the holders of the record title, and not against the mere holding corporation."

The learned judge subsequently added, in his opinion:

"I am aware that the soundness of this conclusion is not free from doubt; but I believe it to be in accordance with equity, justice, and sound reason."

By its Act of March 3, 1891, c. 559, 26 Stat. 1093, Congress declared:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

The testimony is that, at the first meeting of the board of directors of the Linn & Lane Timber Company, Smith laid before the board deeds to the company of certain timber lands in the state of Oregon executed by himself and wife and the proposition to deliver the same to the company, and thereby vest title to the lands therein described in the company and accept as a full consideration for the same the entire authorized capital stock of the company fully paid up and nonassessable; but no minutes or other testimony are offered to show that that proposition was accepted or that the deeds were delivered.

The evidence is that the possession of the deeds never passed to the secretary of the corporation, who was Smith's son, a boy of 17 years of age, nor to any other officer of the corporation, and Trabert, who was the secretary of the C. A. Smith Lumber Company, another of Smith's corporations, testified that from the time of their execution to the time of the first meeting of the Linn & Lane Timber Company the deeds were in his possession, and that from and after that meeting they were kept by him in an envelope together with the articles of incorporation in the office of the C. A. Smith Lumber Company up to the time when they were recorded. He testified as to the reasons why he did not record the deeds, and Smith testified that one reason why he did not "want to record the deeds" was because he did not care to have newspaper notoriety.

But, assuming that the deeds were in fact delivered to the corporation at the time of its first meeting of its board, it is clear that it should be held, for the purpose of determining the question of the application of the statute of limitations, that Smith was the corporation and the corporation was Smith. He organized the corporation. He owned all of the capital stock; he owned all of the lands. Before the corporation was organized and before the patents issued, he knew that the officers of the government were making investigation of the entries, and that there was talk of his indictment by a federal grand jury. The corporation was organized in Minnesota "as a holding company" of lands in Oregon. Up to the time when the deeds were recorded, September 9, 1908, the corporation had never done any business, had never taken possession of the lands or exercised any act of ownership thereof, and there was nothing of record in any state or county office in Oregon to indicate that the corporation possessed any property in the state or had ever transacted any business therein. There can be no doubt that one at least of the purposes for which it was formed was to conceal fraudulently therein the titles to the lands which are the subject of this suit, and to keep the titles so concealed until the time when the statute of limitations should bar the anticipated suit of the government to set aside the patents. This is shown by the fact that the possession of the deeds which apparently were executed on June 4, 1906, May 28, 1907, and August 17, 1907, was retained by Smith, and that he withheld the deeds from record until 3½ months after the commencement of the suit, and by the further fact that up to the date of recording the deeds the taxes on the lands were assessed against and were paid by the grantors and not by the grantee, the corporation.

"The fact that a deed is withheld from record or is otherwise concealed is a badge of fraud." 20 Cyc. 446, and cases there cited.

In McAlpine v. Hedges (C. C.) 21 Fed. 689, it was said:

"When a fraud is of a secret nature, and in the particular case has been conceived and executed upon such a plan as to secure continued secrecy, without further acts of concealment except silence, the statute ought not to run until there has been a discovery. In such a case it may well be said to have been a continuous concealment. The making of a fraudulent deed, and the keeping of it off the record by all the persons concerned in and cognizant of the transaction, combined with their purposed silence upon the subject, it

certainly will not do to say is not a concealment, for which relief may be granted."

[2] In McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590, the court said:

"A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it, and to the officers who are identified with that purpose"—citing Cook on Corporations, §§ 663, 664, in which it is said: "The disabilities of the corporation are not disabilities of the stockholders, nor are the disabilities of the stockholders the disabilities of the corporation. Hence it is that a corporation is often organized to act as a cloak for fraud. Such cases as these are becoming common, and the courts are becoming more and more inclined to ignore the corporate existence when necessary in order to circumvent fraud."

In Re Rieger, etc. (D. C.) 157 Fed. 609, the court said:

"The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a. proper case ignore it to preserve the rights of innocent parties or to circumvent fraud."

In United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 Fed. 247, in which it was alleged that the corporation defendant was a dummy organized, owned, and operated by the stockholders of a brewing company as a device to cover the receipt of rebates on interstate shipments of beer, the court said:

"If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons."

In First National Bank v. F. C. Trebein Co., 59 Ohio St. 316, 52 N. E. 834, the court said:

"The fiction by which an ideal legal entity is attributed to a duly-formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application as frequently to induce the belief that it must be universal, and be in all cases adhered to, although the greatest frauds may thereby be perpetrated under the fiction as a shield. But modern cases, sustained by the best text-writers, confine the fiction to the purposes for which it was adopted—convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members—and have repudiated it in all cases where it has been insisted on as a protection to fraud or any other illegal transaction."

And in State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541, the same court said:

"On a question of this kind, the fact must constantly be kept in view that the metaphysical entity has no thought or will of its own; that every act ascribed to it emanates from and is the act of the individuals personated by it; and that it can no more do or act, or refrain from doing it, contrary to the will of these natural persons than a house can be said to act independently of the will of its owner; and, where an act is ascribed to it, it must be understood to be the act of the persons associated as a corporation, and whether done in their capacity as corporators or as individuals must be determined by the nature and tendency of the acts."

If in any conceivable case a court of equity should look through the form to the substance, it should do so in a case like this. The cor-

poration is Smith. It is Smith seeking shelter behind articles of incorporation and invoking the legal fiction of a corporate entity for his protection in the perpetration of a fraud. Said Lord Mansfield in Johnson v. Smith, 2 Burr. 962:

"The court would not endure that a mere form or fiction of law, introduced for the sake of justice, should work a wrong contrary to the real truth and substance of the thing."

Says Morawetz, in his work on Corporations (section 227):

"The statement that a corporation is an artificial person or entity, apart from its members, is merely a description, in figurative language, of a corporation viewed as a collective body. A corporation is really an association of persons, and no judicial dictum or legislative enactment can alter this fact."

[3] In addition to the foregoing, we think there is other ground on which the judgment of the court below may be sustained. The decision in United States v. Winona, etc., R. R., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789, should not be taken as deciding that no fraud committed by the owner of patented land after the issuance of patent can toll the statute of limitations. No such question was involved in that case, and indeed no question at all of the application of the statute of limitations, and we submit that it was not the intention to overrule Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636. In that case the statute of limitations was as absolute as that which is invoked in the present case. It was section 5057 of the Revised Statutes, providing:

"No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy, and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

Glover, fraudulently intending to take advantage of the bankruptcy law, secretly conveyed property to members of his family. The assignee in bankruptcy, more than three years after his appointment, having ascertained the facts, brought a suit to set aside the conveyances. The court held that the bar did not commence to run until the fraud was discovered. Mr. Justice Miller, for the court, said:

"We also think that in suits in equity the decided weight of authority is in favor of the proposition that, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

Speaking of the principles of the statutes of limitations, the learned justice said:

"They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which should show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to

protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

The doctrine of that case has been reaffirmed in numerous subsequent decisions. In Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382; 28 L. Ed. 395, the court said:

"The case of Bailey v. Glover has often been cited by the court, but has never been doubted or qualified."

No distinction between the statute of limitations involved in that case and that which is involved in the present case is to be found in the fact that in the former the time is limited from the date when the "cause of action accrued."

In Gifford v. Helms, 98 U. S. 248, 25 L. Ed. 57, construing that statute, the court said that the cause of action accrued on the appointment of the assignee or trustee in bankruptcy.

What was said by this court in United States v. American Lumber Company, 85 Fed. 827, 29 C. C. A. 431, was in answer to the contention that the statute of limitations should be liberally construed in favor of the government so as to hold its effort to commence the action equivalent to a commencement thereof within the time limited by the statute. There was in the case no question of fraud or of a fraudulent concealment of a conveyance.

[4] It is suggested that the fraudulent transaction should. be upheld in this case for the reason that a small portion of the stock of the corporation has been purchased by an innocent third party and that a portion of the stock has been pledged as security for a loan. But it has never been held that a corporation which is not itself an innocent purchaser of property can defend a suit to recover the property on the ground that its stockholders subscribed to or purchased their stock in good faith and in ignorance of fraud. The contrary has been held by this court in Wilson Coal Co. v. United States, 188 Fed. 545, 110 C. C. A. 343.

In Cawthra v. Stewart, 59 Misc. Rep. 38, 109 N. Y. Supp. 770, it was held that one induced by the fraud of the president of the corporation, who owns and controls its entire stock, to subscribe for stock, may sue the corporation for a rescission of the contract and for the recovery of the amount paid for the stock. In that case Stewart, who owned 98 shares of stock of the corporation and controlled the remaining two shares and was its president, made fraudulent representations to a third person, and the corporation accepted and retained the proceeds of the fraud with knowledge thereof. It was held that the corporation could not avoid liability on the ground that it did not know of the fraudulent representations until after they had been made, and that it did not authorize the making of them. The court said:

"It is urged in behalf of the demurrant that it is not a party to the contract in suit, that the defendant Stewart was not its agent, and that it had no part in the fraud; in other words, that the defendant Stewart is one person, and that the defendant corporation is an entirely separate, distinct and definite legal entity, and is not bound by or liable for any acts or omissions of the former which it has not authorized. * * * We do not have

a case of agency, but of identity. It cannot properly be said that the corporation could clothe Stewart with authority any more than that Stewart could clothe himself with authority. He was the corporation, and it was only another form of him."

The decree is affirmed.