### UNITED STATES v. SOUTHERN PAC. CO. et al.

(District Court, S. D. California, N. D.  June 7, 1915.)

Nos. 46, A–16, A–24, A–25, A–26, A–28.

1. PUBLIC LANDS ☞120—SUIT FOR CANCELLATION OF PATENTS—SUFFICIENCY OF BILL.

A bill by the United States against a railroad company, which sets out an act of Congress making a grant of lands to defendant within designated place limits with reference to the railroad as constructed, but expressly reserving therefrom all mineral lands, and which alleges that defendant made application for patent thereunder, that with knowledge that certain of the lands included in its application were mineral, and valuable for their mineral, it caused its agent to make affidavit that they were not mineral, for the purpose and with the effect of preventing an examination of the same by agents of the government, by means of which false and fraudulent representations it procured the issuance of a patent for such mineral lands, and that by means set out defendant concealed the fraud until within three years prior to the commencement of the suit, *held* to state a cause of action.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

2. PUBLIC LANDS ☞120—SUIT FOR CANCELLATION OF PATENTS—LIMITATION.

The provision of Act March 2, 1896, c. 39, § 1, 29 Stat. 42 (Comp. St. 1913, § 4901), limiting the time within which suits may be brought for the cancellation of patents to lands thereafter issued under railroad grants to six years from issuance of the patent, does not bar a suit to cancel such a suit on the ground of fraud, where the fraud was successfully concealed by defendant until within six years prior to the bringing of the suit.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

In Equity.  Suit by the United States against the Southern Pacific Company and others.  On motion to dismiss the bill.  Denied.

Thos. W. Gregory, Atty. Gen., and E. J. Justice, Sp. Asst. Atty. Gen., for the United States.

Chas. R. Lewers and Peter F. Dunne, both of San Francisco, Cal., for defendant Southern Pac. Co.

Samuel Shortridge, of San Francisco, Cal., and J. W. Wiley and George A. Whitaker, both of Bakersfield, Cal., for other defendants.

BLEDSOE, District Judge.  The original bill of complaint in the case above entitled, No. 46 Civil, was filed in December, 1912.  It came on for hearing thereafter on numerous motions to dismiss, and was amended pursuant to order of court after the submission of the motions to dismiss and while the same were under consideration by Judge Dooling of the Northern district of this court, whereupon new

motions to dismiss were made, which were argued and submitted to this court at the November term thereof, held in Fresno in last year. The bill in this one case states that the value of the property in controversy exceeds $250,000,000. The aggregate in all the suits exceeds $320,000,000. Because of that fact, and also because of the tremendous importance of the controversy, both to the government and to the various defendants, the court has endeavored to give all the matters submitted to it in the case above entitled, and in the others similar thereto, and which are decided herewith, its most careful consideration, and it has examined with particular care each point advanced by the various parties.

Owing to the great length of time that has elapsed since the submission of these cases, and while the court has had them under consideration, all of which has been due in a large measure to the very congested condition of the calendar of this court, the court feels that it ought not to indulge itself in the additional time necessary to prepare a comprehensive opinion, which would set forth its views in detail upon the various contentions which have been made. If the matters alleged by the government in its bill are true, there is stern and urgent necessity that opportunity should be accorded the government at the earliest possible time to adduce the proper proof in support thereof, and this court feels that it ought not, therefore, for any reason, permit further time to elapse without announcing its conclusions and making the appropriate orders in the premises. Because of this situation, therefore, the court will content itself with a very brief statement of its reasons for its rulings herein.

[1] The suit is brought to cancel a patent issued by the complainant, the United States government, to the Southern Pacific Railroad Company, in 1894, and concerns approximately 45,000 acres of land, situate in the San Joaquin valley. The patent was issued to the railroad company in consummation of the grant made by Congress in 1866, granting to the defendant company, "every alternate section of public land, not mineral, designated by odd numbers, to the amount of * * * 10 alternate sections of land per mile on each side of said railroad," through the state, etc. It was also provided in said grant "that all mineral lands be and the same are hereby excluded from the operations of this act," and in lieu thereof a like quantity of unoccupied and unappropriated agricultural lands in odd-numbered sections within 20 miles of the railroad were to be selected. It was also in said act provided, further, "that the word 'mineral' when it occurs in this act shall not be held to include iron or coal."

It is alleged that the defendant Southern Pacific Railroad Company, through its land agent, and in compliance with the act of Congress above referred to, made application for the land in question, and concurrently therewith made affidavit that "said lands are vacant, unappropriated, and are not interdicted mineral or reserved lands, and are of the character contemplated by the grant," etc.; that thereafter appropriate action was taken by the officers of the Interior Department, resulting in the issuance of a patent for the lands in question. This patent as issued, and as received and accepted by the defendant, it is alleged, contained the usual mineral exception clause to the effect

that "all mineral lands, should any such be found in the tracts granted," were excluded and excepted from the operation of the patent. It is then alleged that the complainant was induced by the fraud of the defendant not to actually examine the lands described in the application for the patent, but to rely upon the said affidavit and the fraudulent representation of the said defendant that it would not question the validity of the said exception of mineral land above mentioned; that the defendant intended, however, thereafter to assert the invalidity of this exception in the patent, and to fraudulently acquire title to the mineral lands in controversy, which it knew at the said time of acquiring patent were mineral, but fraudulently concealed from the plaintiff this knowledge and all the information thereof. It is further alleged that during the past three years the plaintiff has ascertained, and alleges the fact to be, that of the lands described in said patent, approximately 45,000 acres thereof are valuable mineral lands, and contain rich deposits, in commercially paying quantities, of petroleum, and other valuable minerals; that they were well known to be mineral lands as aforesaid, prior to May 9, 1892, and that they had no appreciable value for agricultural purposes, or for other purposes than for the mineral contained therein, "all of which facts concerning the mineral character of said lands, and the existence of mineral locations affecting the same, have been well known to the said Southern Pacific Railroad Company and its officers and agents since long prior to May 9, 1892." It is also alleged that at the time of the application for the patent above mentioned it was well known to the said Southern Pacific Railroad Company, and the officers and agents thereof, that the lands in controversy herein contained valuable minerals and were mineral lands within the meaning of the provisions of the act of Congress above mentioned; that at the time said company caused said application to be made it and its officers and agents well knew that the officers of the Department of the Interior, being induced by the affidavit of the land agent of the defendant, which affidavit falsely represented said lands were not mineral lands and were of the character contemplated by the grant above mentioned, would cause patent to be issued for all of said lands without any further examination, consideration, or adjudication of the question whether any of said lands were mineral or nonmineral in character, and without actual knowledge upon the subject, and that in lieu thereof the said officers of the Department of the Interior would act upon the allegation in said affidavit, and would be misled and deceived thereby. It is further alleged that the said Southern Pacific Railroad Company caused its said land agent to support its application for patent as aforesaid, knowing at the time that the said lands were mineral, and falsely representing that they were not mineral, with the secret and fraudulent intention of inducing the Department of the Interior to issue a patent therefor, without any actual or further examination, consideration, or adjudication as to the mineral character of said lands, and in actual ignorance of their mineral character.

It is then alleged that all of the officers of the United States having authority in all proceedings with reference to said patent were, until long after its issuance, ignorant of the fact that any of the lands de-

scribed were mineral in character, and were also ignorant of the aforesaid fraudulent and secret intention, purposes, and acts of the said Southern Pacific Railroad Company, in consequence of which, and because of the false representations of the said defendant and of its land agent, which representations were known to be false, were calculated and intended to deceive said officers of the plaintiff, and which did actually deceive them, no finding, decision, or adjudication as to the mineral or nonmineral character of the said lands was ever made by them. It is also charged that, in addition to the secret and fraudulent purpose and intent of the defendant company and its officers and agents above referred to, it was also the secret and fraudulent purpose and intent of the said Southern Pacific Railroad Company, its officers and agents, to conceal from the plaintiff the true facts in the premises until more than six years had elapsed from the time of the issuance of the patent, to the end that plaintiff should thereby be delayed in the institution of judicial proceedings to enforce its rights, in order that the defendant might successfully plead the statute of limitations to any suit which might thereafter be brought. Thereafter, at some considerable length, allegations are made showing the means and devices adopted by the defendant to conceal and keep from the officers of the United States government the facts and the perpetration of the frauds hereinabove referred to.

The bill of complaint comprises some 135 pages of printed matter, and it is obvious, of course, that the above is but the merest skeleton of the allegations contained therein. It suffices, however, in my judgment, in determining the substantial features of the matters pressed upon me for consideration, to suggest that the bill shows, in apt language, that upon the performance of certain conditions the Southern Pacific Railroad Company was entitled to receive a grant of certain lands from the government; that in no event was it entitled to receive any so-called mineral lands, they being expressly reserved from grant by Congress; that nevertheless defendant company, knowing that the lands in controversy herein were, and were well known to be, mineral, falsely and with the intention to deceive the United States government, made claim to the lands in question herein, and made affidavit that they were not mineral, and were therefore comprehended within the terms of the grant; that the officers of the United States government relied, without making any actual investigation or examination of the lands in controversy, upon the representations made in that behalf by defendant company, and that, acting thereon, being influenced solely thereby, patents were directed to and did issue covering the interdicted lands in question; and that thereafter, and until within three years previous to the commencement of the action, defendant company, desiring to cover up its fraud, so as to enable it ultimately to secure a valid title to the lands which would be impregnable to attack because of the fraud thus committed, contrived to conceal both the character of the land, in so far as it was enabled so to do, and contrived effectually to conceal the fact of the existence of its own fraud previously consummated. Such are the facts alleged by the United States government. Upon their proof in the cogent

and pursuasive manner and to the degree required in cases where fraud is charged, it would seem without question that the relief prayed for should be accorded to the complainant.

A number of reasons, fortified by able and instructive arguments made in their behalf, have been urged by the defendants to the effect that the court should, in spite of the clear, and to me certain and unambiguous, allegations of the bill of complaint, dismiss the proceeding and declare to the complainant, the government of the United States, that it has made no case which comes within the purview or consideration of this court. In this behalf it is urged, first and most insistently, that the action is barred by virtue of certain statutes of limitation enacted by the Congress of the United States. Act March 3, 1891, c. 559, 26 Stat. 1093; Act March 2, 1896, c. 39, 29 Stat. 42, Comp. St. 1913, § 4901.

[2] The argument in support of the plea of these statutes covers hundreds of pages of the briefs of counsel herein. In the determination of this plea the court ought perhaps to indicate at some considerable length the reasons why it is constrained to hold it untenable, but the lack of time and the pressure of other duties, hereinabove referred to, inhibits such a course. Suffice it to say that in the first place it has been determined by the Circuit Courts of Appeals, both in the Eighth and Ninth Circuits, that the act of Congress of March 3, 1891, relied upon by defendants, has no application in such a proceeding as this. Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267; same case, 203 Fed. 394, 121 C. C. A. 498; United States v. Exploration Co., 203 Fed. 387, 121 C. C. A. 491. It has been suggested that this court is not bound to, and should not, follow these decisions, and that they do not correctly state the law. Disregarding the rather manifest impropriety of refusing to follow a decision of the Court of Appeals of this Circuit, even if I should conclude that such decision did not, in my own judgment, enunciate the law, in the present instance, my own conclusion is in thorough accord with that of the Circuit Court of Appeals, and there can therefore be no possible reason why its conclusion should not be followed.

It was determined by the Supreme Court of the United States, apparently as the unanimous expression of the views of that court, and speaking through one of the most profound lawyers who ever sat upon that exalted bench, Mr. Justice Miller, in Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636, that, in a suit based upon fraud, the statute of limitations otherwise operative does not commence to run until the fraud has been discovered by the party aggrieved thereby. In so holding Mr. Justice Miller said:

"We are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds—to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

. I can find no case involving the question of fraud which detracts from or impairs the reasoning of this sound and salutary declaration of the principles of morals and philosophy which should control the action of a court of equity.

. The counsel for defendants seek to differentiate the ruling in Bailey v. Glover because of the fact that there the statute of limitations began to run "from the time the cause of action accrued," while in the acts of Congress in question herein the statutes began to run from the date of the issuance of patents by the government. I can see nothing, however, in this suggestion, of benefit to defendants. In the case at bar the cause of action as for the fraud alleged accrued—that is, arose —at the time of the issuance of the patent, in consequence of the fraudulent representations. Counsel advance the suggestion that:

· "It is not illogical and does no violence to the language of the statute involved in Bailey v. Glover to say that an action 'accrues' to a plaintiff when he discovers that he has one."

I can discover, however, no authority which supports this suggestion, and the use and definition of the word "accrues," as found in the books, do not lend countenance to it. 25 Cyc. 997, 1066. So, also, counsel advance the argument that the equitable rules recognized and enunciated in Bailey v. Glover arise out of the application of the doctrine of laches by courts of equity, and that because thereof, in a suit in which the government is a party plaintiff, the usual and ordinary rules followed as between private individuals, where the statutes of limitation are held in restraint in cases involving fraud, are not applicable. I confess to an inability to follow counsel in this deduction, and know of no reason, and my attention has been directed to no authority announcing one, why the government of the United States, when it brings a suit as a private individual with respect to its own property and of which it has been unlawfully deprived, should be subject to any harsher rule than that applicable to a private individual in a like exigency. In addition, as above indicated, the Supreme Court of the United States, in Bailey v. Glover, do not announce the rule there as emanating from, or being at all likened to, the disposition of courts of equity to recognize the general doctrine of laches, but rather base their conclusion upon the emphatic and obvious proposition that a court of equity will not, in the face of plaintiff's ignorance of the fraud, permit a continuing fraud to consummate its own fraudulent intent by the plea of the Statute of Limitations. Were the rule otherwise, fraud would be encouraged to feed upon itself; a premium would be placed upon the doing of added wrong, in order that the original wrong might be made immune merely through the passage of time. In addition, and in conclusion, upon this branch of the case, it may be said that all of these arguments were passed upon unfavorably by the Circuit Courts of Appeals in the cases hereinabove referred to.

Complaint is also made that the bill presents a double aspect, in that it is a suit to quiet the government's title to the land involved and also a suit to cancel the patent heretofore issued to the defendant; that there is an insufficient allegation of the fraud alleged against the defendant with respect to the mineral character of the lands involved

and of the concealment of the fraudulent acts and conduct of the defendant, subsequent to the reception by it of its patent. It will have to suffice in this behalf to state that I have gone over all of these matters carefully and can come to no conclusion other than that the contentions of the defendants are untenable. It is not the fact, of course, that the lands are, or were at the time of the patents, mineral lands, which gave the goverment a right of action. It is the fact alleged by the government that the defendant railroad company, at the time of its application for, and the receipt of, the patent, knew that the lands incorporated therein were mineral lands, and were not comprehended within the terms of the congressional grant, which gives the government its right of action at this time. In other words, it is the *fraud,* and not the fact with respect to the mineral character of the lands, which authorizes the government to ask for the cancellation of its patent. To me there is no ambiguity in the bill of complaint with respect to the relief which is asked, nor the ground upon which such relief is based. Doubtless some of the allegations in the complaint could be polished up and made to show less of verbiage and more of brief and unqualified allegation of fact. Doubtless, also, however, this is unnecessary in order that the defendants may have a proper and sufficient understanding of the charge which is made, and which they are called upon to meet, if they would successfully defend their title to the lands now held by them.

The case comes now before the court merely upon the assertions of the government of the United States with respect to matters of fact which it alleges it can prove. In the event, of course, that it fails to prove to the proper and sufficient degree the facts which it alleges, its case must fail and the defendants will go hence. It must be assumed, however, that the government is acting in entire good faith in the prosecution of this litigation, and any slight verbal inaccuracies in the statement of its case, which do not detract from the substantial feature of the serious charge which it makes, ought not to be considered of sufficient importance to justify further delay in the presentation of the proofs in this case, which delay, through loss of witnesses on the one side or the other, might prove of substantial detriment to all parties in this important controversy.

Objection is also made that necessary defendants are omitted in one of the cases. There is no suggestion, however, apparent upon the face of the complaint, that such parties are at all necessary parties within the meaning of the rule requiring their presence in the case. Non constat they are innocent purchasers for value, and therefore their rights are protected and confirmed by the very statute defendants have pleaded by way of limitation herein. Act March 2, 1896, 29 Stat. 42.

I have considered all of the motions to strike out and make more certain, and will state, generally, that none of them, in my opinion, require affirmative action on the part of the court, or justify further mention herein. In each case the motions to dismiss, strike out, and make more certain are denied.